## KANSAS CITY LIFE INS. CO. v. ELMORE.
### (No. 1712.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 1, 1920.)

**1. Insurance ⬤186(3)—Insured has notice of limitations on collecting agent's powers stated in policy.**

Insured, who accepted a policy containing provisions authorizing an agent to collect renewal premiums only upon receipt furnished and signed by the general officers, has notice of the limitation of the agent's authority, and, if he makes payment to an agent not holding the receipt, he in effect makes the agent his own, in the absence of agreement, waiver, or estoppel, and the payment must reach the insurer in time to satisfy the terms of the policy.

**2. Insurance ⬤372—Requirement of payment only to agent having receipt may be waived.**

The stipulation in an insurance policy for payment only to an agent having the receipt furnished and countersigned by the general officers of the company may be waived so that it does not necessarily render inadmissible any other kind of receipt or proof of payment.

**3. Insurance ⬤361—Payment to agent authorized expressly or by estoppel or waiver to collect is sufficient.**

Payment of a renewal premium is sufficient to prevent forfeiture of the policy if made to an agent of the insurance company authorized to accept such payment either expressly or by waiver or estoppel, even though the payment is not thereafter transmitted to the insurance company before the expiration of the time for payment of premiums or at all.

**4. Appeal and error ⬤931(4)—Finding necessary to support judgment may be imputed to court.**

Where the evidence was sufficient to show that insurance company made a bank its agent and waived the requirement that the bank should have a receipt, but the jury did not specifically find that the bank as agent collected the premium as authorized under the agreement, or as required by the policy, that finding may be imputed to the trial court by an appellate court to support a judgment sustaining the policy.

**5. Jury ⬤97(4)—Juror having "bias" is absolutely disqualified.**

A juror who stated on his examination that he had a bias for defendant is absolutely disqualified as a juror by Rev. St. 1911, art. 5117, disqualifying any juror who has a bias or prejudice in favor of or against either of the parties, notwithstanding his further statement that he could disregard his feeling; "bias" being defined as a particular influential power which sways the judgment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bias.]

**6. Jury ⬤97(1) — Court has no discretion where juror is disqualified by statute.**

Though the trial court has discretion to determine whether a juror is disqualified for a cause which the statute does not declare a disqualification, it has no discretion where the juror has a bias which under the statute disqualifies him.

**7. Pleading ⬤228 — Pleading alleging waiver only inferentially is subject to special exception.**

A pleading which alleged facts from which it might be inferred that an insurance company had waived a requirement of the policy so that it would be valid against a general exception is nevertheless subject to a special exception.

**8. Insurance ⬤186(3)—Officer of collecting bank can act as agent for insured.**

There is no objection to an officer of a bank which was an agent to collect premiums for an insurance company, acting as agent for the insured in paying the amount of the premium into the bank.

**9. Insurance ⬤109—Agency for insured to pay money into collecting bank not inconsistent with duties as officer of collector.**

There is no inconsistency between the duties of an officer of a bank which was the collecting agent of an insurance company with reference to the collection of the premium and his acting as agent for the insured in paying the amount of the premium into the bank; for the collecting of premiums by an insurance agent and the payment of such premiums by an agent for insured are merely ministerial, not fiduciary, acts, so that they can both be performed by the same person.

**10. Insurance ⬤24—Statute not applicable to policy issued and delivered in another state.**

Rev. St. 1911, art. 4741, forbidding issuance of a policy within the state unless it contains certain provisions, does not prevent suit within the state on a policy issued in another state, where the renewal premium was paid in still a third state in violation of one of the provisions of the policy required by the statute.

**11. Insurance ⬤392(1)—Payment at different place accepted by company does not authorize forfeiture.**

Payment of a renewal premium on a policy containing the provision required by Rev. St. 1911, art. 4741, that payment shall be made to an agent on delivery of receipt signed by an officer of the company, if accepted by the company, though made to an unauthorized agent, is not void so as to authorize forfeiture of the policy.

**12. Insurance ⬤186(3)—Bank can act as agent to collect premiums.**

Rev. St. 1911, art. 4969, prohibiting a corporation from soliciting, selling, or placing life insurance policies in the state, does not prohibit a bank from receiving the money due a life insurance company for premiums.

**13. Evidence ⬤121(3)—Collection slip held admissible as res gestæ.**

In an action to restrain recovery on a life insurance policy, where the insurance company claimed the bank to which payment of renewal premium was made was not authorized by it to accept such payment, a collection slip sent

by it to another bank with the receipts required by the policies authorizing the other bank to collect the premium in question, though self-serving in its nature, was admissible as part of the res gestæ of the effort to collect the premium and the authority to collect.

**14. Witnesses ⬅️414(2)—Collection slip held admissible to corroborate testimony of secretary.**

Where the secretary of an insurance company testified at the trial that when he wrote a letter he had no knowledge of the illness or death of insured, a collection slip returned to the company containing that information after the letter was written is admissible in corroborate his testimony.

**15. Evidence ⬅️116—Collection slip held admissible to supply information in receipt.**

Where a receipt signed by the officers of the company and to be countersigned by the collecting agent, but which did not give the name of the agent, was admitted in evidence, a collection slip sent to the agent with the receipt was admissible to supply the name of the collector in support of the insurance company's contention that the premium was paid to an unauthorized agent.

**16. Evidence ⬅️357—Notation of death of insured by agent on collection slip does not render it inadmissible.**

Where a letter or collection slip sent by an insurance company was admissible in its behalf on the issue of authority of an agent to collect premiums, the fact that a notation was made thereon by the collecting agent, when he returned the slip to the company, of the death of insured, does not render the slip inadmissible. ·

**17. Insurance ⬅️186(3)—Cannot forfeit policy for collecting agent's failure to take out license.**

It is the duty of an insurance company to see that a license required of its agent was taken out by him, and it cannot rely on his failure to have such license, where payment was made to the authorized agent, so that it was not error to· exclude evidence of a statute of the state where the payment was made requiring the agent to have such license.

**18. Banks and banking ⬅️90—Agency of bank can be proved by testimony of officer.**

Testimony by an officer of the bank that the bank was an authorized agent of an insurance company to collect premiums is not subject to the objection that the agency cannot be proved by declarations of the agent, since the bank, and not the cashier, was the agent of the insurance company, and the testimony was not a mere declaration, but was evidence in court.

**19. Evidence ⬅️144 — Evidence tending to prove agency, though not satisfactory, is admissible.**

Whatever evidence has a tendency to prove the agency of the bank to which a renewal premium was paid by insured is admissible on that issue, even though it is not full and satisfactory, since it is the province of the jury to pass upon the evidence.

**20. Evidence ⬅️171—Bank cashier can state amount of deposit when that is collateral issue.**

When the amount of an insurance company's deposit in a bank is merely a collateral issue in a suit between the insurance company and the bank as bearing on the manner of remitting the renewal premium paid to the bank to the insurance company, the cashier of the bank can testify to the amount of such deposit if he has personal knowledge thereof, without producing the books or deposit slips.

**21. Insurance ⬅️113—Knowledge of collector's agency by agent of insured creates estoppel in favor of insured.**

Where the cashier of a bank which acted as agent of an insurance company to collect premiums deposited as agent for insured the amount of such premiums, his knowledge of the acts of the insurance company with reference to such premiums is imputed to insured so as to establish reliance thereon by insured essential to show estoppel of the insurance company to assert want of agency.

**22. Trial ⬅️350(4)—Issue involving suppositious facts held improper.**

In an action between an insurance company and the beneficiary, where the company claimed a bank to which the renewal premium was paid was not authorized to receive it, and the beneficiary relied on waiver and estoppel, it was improper to submit an issue whether the insurance company would have accepted payment of the premium through the bank if the bank had remitted in the usual manner instead of by certificate of deposit.

**23. Insurance ⬅️186(4), 388(4)—Check or certificate of deposit not payment of premium without waiver or estoppel.**

The tender of a bank check or certificate of deposit in payment of a premium is not sufficient compliance with the requirement of the policy unless in the course of dealings between the parties similar payments have been received so as to estop·the insurer from claiming that payment in that manner was insufficient.

**24. Insurance ⬅️360(4)—Beneficiary required by show acceptance of deposit certificate as payment.**

Where the beneficiary relied upon payment of a premium by a certificate of deposit sent to the insurance company, she must show that the certificate reached the company before the day of grace for payment expired, and was accepted by the company as a payment.

**25. Insurance ⬅️392(8)—Acceptance of premium in ignorance of death does not waive previous forfeiture; "waiver."**

Where a life insurance policy had been forfeited under its terms for nonpayment of a renewal premium, acceptance of payment of the premium by the insurance company without knowledge that the insured was then dead does not waive the forfeiture, since waiver presupposes a full knowledge of an existing right and an intentional surrender or relinquishment of that right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**26. Insurance ⬌388(4)—Acceptance of premium may create estoppel.**

The conduct and dealings of an insurance company may be such as to estop the company from declaring a forfeiture because payment of premium was not made in the manner required by the policy.

**27. Insurance ⬌377(1)—Manner of payment may be waived before forfeiture in ignorance of sickness.**

Acceptance by an insurance company of payment of a premium before the expiration of the time for payment may waive the right to forfeit the policy for failure to pay in the manner required, though the insurance company, when it accepted the payment, was ignorant of the serious illness of insured.

**28. Insurance ⬌388(3)—Forfeiture not favored where insured tried to make payment.**

Courts are disposed to seize upon slight circumstances to prevent a forfeiture of an insurance policy, and, in the absence of fraud, where insured made an effort to transmit his premium in time, trivial or technical objections to the manner of payment will not defeat it as a payment if there are acts or conduct on the part of the insurance company which would induce the insured to omit to follow the strict letter of the policy.

**29. Trial ⬌350(4)—Issue whether insurance company authorized bank to make collection without receipt held required to be submitted.**

Where the beneficiary of an insurance policy relied upon payment to a bank as an agent of the company, and it appeared the receipt for the premium had been sent to another bank, a requested issue as to whether the bank to which payment was made was authorized by the insurance company to accept payment of the premium without having the receipt was proper and should have been submitted.

**30. Trial ⬌350(4)—Issue whether another bank was sole agent to collect insurance premiums held proper.**

Where the beneficiary of an insurance policy relied upon payment of a renewal premium to an agent of insured which did not have the receipt furnished by the company for that premium, an issue requested by the insurance company whether another bank to which the receipt had been sent was the sole agent of the company to collect that premium was proper and should have been submitted.

Appeal from District Court, Lipscomb County; W. R. Ewing, Judge.

Suit by the Kansas City Life Insurance Company against Edna R. Elmore to restrain defendant from prosecuting actions at law against plaintiff Company. From a judgment granting the injunction against further prosecution of suits in a particular justice's court, but dissolving the temporary injunction in all other respects, the plaintiff appeals. Reversed and remanded.

Hoover, Hoover & Willis, of Canadian, for appellant.

W. H. Sewell, of Lipscomb, and E. C. Gray and H. L. Adkins, both of Higgins, for appellee.

HUFF, C. J. This is an appeal from a judgment of the district court of Lipscomb county granting an injunction restraining the appellee, Edna R. Elmore, from further prosecuting suits against appellant insurance company in justice court, precinct No. 4, of said county, but in all other respects dissolving a temporary injunction and granting to appellee thereby authority to resort to such remedies and actions for the recovery of installments thereafter to become due and payable upon a life insurance policy declared on in this case. The decree awarded appellee a recovery upon the monthly installments due under the policy which had accummulated up to the date of the judgment, amounting to $400, the monthly installments being $25, and interest upon the installments from the respective dates of their maturity, and penalty of 12 per cent. on the $400 and $100 attorney's fees. The trial of the case in the district court resolved itself into an inquiry into whether the life insurance policy was forfeited for the nonpayment of the annual premiums within the time and terms of the policy. The appellant, as plaintiff below, in the petition for injunction, in paragraph 2 thereof, alleged:

"That heretofore, to wit, on the 21st day of December, 1917, plaintiff, in consideration of the stipulations, agreements, and representations contained therein, and the payment of the annual premium therein stipulated for, issued its policy of life insurance on the life of Benjamin F. Elmore, agreeing to pay $25 monthly for 240 consecutive months to the defendant, Edna R. Elmore, the designated beneficiary in said policy, the first premium to be made immediately upon receipt of due proofs of death of the insured during the continuance of the policy; that said policy was issued in consideration of the payment by the insured of an annual premium of $77.52, for one year's term insurance from the date of said policy, with the provision that the policy should be continued upon further payment of a like amount on or before the 1st day of December of each year thereafter during the continuance of said policy; that by said policy it was provided that all premiums subsequent to the first premium should be due and payable in advance at the home office of the company, without notice, with the further provision that such premium might be paid to an authorized agent of the company on or before the date when due but only in exchange for a receipt signed by the president, vice president, secretary, or assistant secretary of the company, and signed by such agent, and that upon failure to pay a premium on or before the date when due the policy should become null and void, without any action or notice by the company, and all rights thereunder should be forfeited to the company, except as otherwise provided in the policy, after such policy had been in force for

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

three years; that said policy further provided for a grace of one month (without interest charge) for the payment of all premiums except the first, during which the insurance would remain in full force."

It is also alleged the insured died on the 6th day of January, 1919; that prior to his death he paid the first annual premium on the policy, but did not pay the company, as provided by the terms and provisions of the policy, the second annual premium, which became due thereon on or before the 1st day of December, 1918, or within one month thereafter, or any time before his death, by reason of which the policy became forfeited and of no further force or effect after the expiration of one month from December 1, 1918. Then follows allegations to give the district court jurisdiction to restrain the appellee from the prosecution of the suit in the justice court above mentioned.

The appellee, except as admitted, denies the allegations of the petition. She admits as true all of paragraph 2 above quoted except the allegation that the policy was issued for one year's term. She alleges it was a life policy. The appellee alleged that the appellant waived the payment of the renewal premium at the home office without notice, and that the other exception provided for in the policy did not apply in this case; that Elmore, through those acting for him, paid the premium on the 28th day of December, 1918, to the Laverne State Bank of Oklahoma; that the bank, by an agreement theretofore made with appellant, was its authorized agent to collect and receive renewal premiums, and that appellant had fully ratified the acts of the bank in so doing, and that by such agreement the bank was authorized to collect and remit to appellant the premiums paid to the bank on policies issued by the appellant; that Elmore, the insured, while the policy was in effect and before the expiration of the time allowed by the policy for payment of the premiums, made arrangements with T. N. Stewart to pay the premium for the insured that Stewart did pay to the bank the premium due on the policy; "that T. N. Stewart was the assistant cashier of the Laverne State Bank at the time he paid the premium aforesaid to the bank, at the instance and request of Benjamin F. Elmore and others, acting for him, and he had full knowledge of the arrangement aforesaid with plaintiff and the Laverne State Bank, and, acting upon that knowledge and upon the arrangement aforesaid, and upon the authority of the bank to collect the premiums, he, as representative of said Benjamin F. Elmore, paid the bank, and, as an employee of the bank, accepted the premium through the bank for the plaintiff, and, as the employee of the bank and acting for it, he remitted the premium to the home office at the time and in the manner hereinafter stated."

It is alleged substantially that, after the bank and appellant entered into the arrangements aforesaid, the bank did collect from various and sundry persons premiums and premiums, other than the first premium on different policies issued by the plaintiff to various persons which they were otherwise bound to make direct to the home office, and from time to time after the arrangement aforesaid and previous to the particular remittance in question, and after the remittance in question, the appellant, in full recognition of the bank's conduct and with full knowledge of the arrangements and the provisions of its policies requiring the premium to be paid at the home office, accepted said premiums so collected and remitted by the bank, thereby authorizing and empowering the bank to collect at Laverne, Okl., earned premiums on its policies, waiving the express stipulation in the policy that the same should be paid at the home office; that at the time Stewart was requested to pay the premium there was time sufficient remaining in which he could have and would have remitted the premium to the home office at Kansas City, Mo., but for his knowledge of the arrangements aforesaid, and that, if the conduct hereinbefore alleged did not constitute a waiver on the part of appellant as to the place of payment, it was such conduct on its part and knowledge of the same having been brought home to the deceased, through said Stewart for him, as to estop the appellant from now asserting that the policy was forfeited for the reason that the premium was not paid at the home office. And appellee specially pleads all the matters so alleged as an estoppel against appellant to assert the invalidity of the policy, for the reason that the premium was not paid at the home office within the time provided in the policy; but it is alleged in connection therewith that the premium was in fact paid at the home office within the time required by the policy.

It is also alleged that, if the premium was not paid to appellant or its authorized agent, as above alleged, within the time required by the terms of the policy, the appellant, by its conduct, elected to treat the policy as a continuing and binding obligation; that appellant received on December 31, 1918, at its home office, a certificate of deposit issued by the bank as heretofore set out, and had notice at that time and knowledge that this represented a premium due on the policy sued on. It is alleged that subsequent to that time the bank and appellant had a controversy as to remitting the money by deposit slip instead of sending a draft, but appellant never objected to receiving the premium because the policy had lapsed, but was insisting that the money be sent by the usual medium of exchange; that this conduct was several days after the policy would otherwise have been forfeited but for the payment of the premi-

ums. It is urged that it was not then contended there was a forfeiture until after appellant learned of the death of Elmore, all of which is urged as a waiver.

The appellant answered by a supplemental petition, at some length, presenting a general and special exception, denying under oath the agency of the bank as set up by the appellee. It alleged it had no agent at that place except one Compton, whose authority was limited by his contract of agency. It again pleaded the provision of the policy issued in this case with reference to paying premiums. It then pleads that no written receipt was sent the Laverne State Bank, and that the deceased, Elmore, lived near Follett, Tex., and that it sent a receipt for the collection of the insurance to the Farmers' National Bank of Follett, Tex., where it authorized the premium to be collected in cash; that it did not accept the certificate of deposit as payment, and at the time of its reception it did not know of Elmore's then illness, and when it wrote for the payment to be made by the usual exchange it did not then know of his death, and it did not at any time waive the forfeiture of the policy, etc.

In answer to special issues the jury found that Laverne State Bank collected premiums for appellant; that appellant authorized the bank to collect renewal premiums for it; that on the 28th day of December, 1918, appellant was permitting the bank to collect renewal premiums for it and accepting such premiums from the bank when remitted to it in the manner and form acceptable to the insurance company, and that the acts and conduct of the insurance company towards the bank with respect to collections of premiums during the years 1917 and 1918 were such as to reasonably lead policy holders to believe that the bank had authority from the company to collect such premiums.

"Question No. 5: Would the insurance company have accepted the premium on the Elmore policy after the expiration of one month's grace granted in the policy, and before it had knowledge of the sickness and death of the insured and continued the policy in force, if the remittance of such premium had been made to the company by the usual medium of exchange?"

The jury answered: "Yes."

"Question No. 6: Did the insurance company, after the expiration of the one month grace in which to pay the premium, and up to the time of the death of Elmore, evince an intention to continue the policy in full force and effect if the past-due premium should be remitted by the usual medium of exchange?"

The jury answered: "Yes."

We will not set out our conclusion of the facts at this time, but will refer to such as shall be deemed essential to an understanding of the issues discussed in the course of the opinion.

The first assignment of error urges that the court was in error in overruling the general exception. By proposition it is urged, where it is admitted the policy had lapsed unless the premium was paid, and where the pleading shows the premium was remitted by certificate of deposit, which was in violation of the express terms of the policy, and does not show any authority conferred by the company upon the remitting agent so to do, and the pleading relies upon a waiver to excuse payment according to contract, and shows no acts were done by the insurance company as a waiver until after the death of the insured, the pleadings are insufficient as against a general demurrer.

The pleadings of appellee specifically allege a waiver of the terms of the policy to make payment at the home office, but does not allege specifically that the provisions that agents are only authorized to collect renewal premiums upon receipts furnished and signed by the president and secretary were waived. It may be the general allegation that there was a specific agreement authorizing the bank to collect such premiums and remit the premiums to the home office and that appellant accepted such remittances and ratified such collections, together with the further allegation that appellant received such remittance and accepted the same and only objected to the manner of remittance in the form it was sent instead of by draft, inferentially alleges a waiver of the latter provision of the policy. It would seem, however, that the pleadings limited a waiver to the clause requiring payment to the home office, but perhaps, in the absence of a special exception, we would not be justified in holding the general exception should have been sustained.

[1, 2] At this time we will give our views on the terms of the policy. A party, after he has accepted a policy giving powers to an agent to collect renewal premiums only upon a receipt furnished and signed by the general officers and countersigned by the agent, written in the face of the policy, has notice that the agent's power in collecting is limited. Ordinarily he could not rely on the assumption of the agent to act without being in possession of the proper receipt. If the insured has made payments to an agent without such receipt, he will be required to show a waiver by the insurer or estoppel upon it to deny such powers in the agent. If the insured makes payment to an agent with such limited power, in the absence of an agreement, waiver, or estoppel, he in effect makes the agent his own, and the payment must reach the insurer in the time and in the form which will satisfy the terms of the policy as to payment. Of course, the stipulation for a certain kind of receipt would not necessarily make any kind of receipt or proof of payment inadmissible. It is a provision that could be waived if the evidence establishes the agent was in fact authorized to collect

the premium. It would seem, however, the purpose of such provision is to protect the company from unauthorized payments to local agents or collectors. The allegation should be sufficient to show that the company waived, as to the bank, such protection. Equitable Life Assur. Soc. v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720; Bishop v. Covenant, etc., 85 Mo. App. 302; Matthews v. Metropolitan Life Insurance Co., 147 N. C. 339, 61 S. E. 192, 18 L. R. A. (N. S.) 1219, and notes; 1 May on Insurance (3d Ed.) par. 126; 2 Joyce, Law of Insurance (2d Ed.) pars. 1167, 1168. The company, through its general officers, had a right to make a new agreement with its agent, verbal or in writing, or as to any particular agent, waiving the provision of the policy for its protection. Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63.

[3] The second assignment asserts the court should have peremptorily instructed a verdict for appellant. The evidence is sufficient to raise the issue that the bank was the agent of appellant to collect the premium and was authorized to remit it. If the agreement was not sufficient to that effect, the evidence nevertheless raised the issue of waiver and estoppel to assert the limited powers of the agent. If it was such agent, the payment of the premium to it was incontestably paid in time under the terms of the policy, and there was no forfeiture of the policy. The money was in the hands of appellant before forfeiture, and appellant, through its agent's knowledge, knew such fact. The mere fact that its agent remitted the money in a form not satisfactory to appellant made the payment to its agent none the less a payment when it was paid to the bank. The insured, after its payment, had no control over the agent in remitting the sum. If it had been embezzled by the agent of appellant, this would not have affected the insured's rights. At this time we will not discuss T. M. Stewart's agency. It is apparently appellant's contention that, as he was acting for the insured in placing the money in the bank, he was still acting for the assured when he remitted the amount to appellant while he was acting at that time as cashier of the bank and for the bank in making the remittance. As alleged, the bank was the collecting agent, and if the insured paid or caused to be paid into the bank in making the remittance. As alleged by the policy, there was no forfeiture. As we understand, it was not required under such circumstances to show the money actually got into the home office before the expiration of the month of grace, or that the bank, under its contract, remitted by sending the required draft. If the bank was appellant's agent, this was all immaterial in so far as appellee was concerned. The manner of remittance and when received at the home office only becomes material in case the bank is not the insurance company's agent, but was only acting for the insured. The trial court in this case seems to have considered the agency of the bank the crux of the case and submitted practically only that issue, and the jury found the bank was the agent of the appellant, and we think the evidence will support their findings.

[4] The third assignment, we think, is disposed of by what has been said under the preceding assignments. If the findings of the jury did not specifically find the bank as agent actually collected the premium, as it was authorized under the agreement or in the form as the terms of the policy required, we may impute that finding to the trial court; the evidence being sufficient to find an agreement making the bank such agent, and that the insurance company, in so far as the bank was concerned, waived the requirement that it, as agent, should be in possession of the receipt signed as designated in the policy. Life Insurance Co. v. Berwald, 72 S. W. 436; Sun Life Insurance Co. v. Phillips, 70 S. W. 603.

[5] The fourth assignment asserts error on the part of the trial court in overruling a challenge of appellant for cause to the juror D. S. Best. It appears that appellant was forced to accept this juror after its challenge for cause was overruled. The challenge for cause is based on the bias of the juror. The juror was a neighbor and friend of the insured and his wife, appellee herein, and possessed a friendly feeling for them. At one time during the juror's examination he answered a question propounded to him by the court, "Have you any bias in this case, or rather see the case go either way?" He answered, "Yes; certainly," but also answered further he had no hope or secret view in his mind that the evidence ought to go in favor of Mrs. Elmore, and had no leaning, also, if under the law the money belonged to her, he would like to see her get it, and, if it did not belong to her, he would not like to see her get it. He was asked by appellant, "In other words, you think you have not sufficient mastery over your will to lay aside your preference?" He answered, "Yes," and also answered that he had no such preference for the other side. He further stated he would like to see Mrs. Elmore win, provided it would not be contrary to justice. He answered the court that he would and could, if selected as juror, go into the jury box with a free and impartial mind and return a verdict according to the law and evidence, wholly unaffected by any friendship or favor he might have for Mrs. Elmore. He did not know the appellant or any of its officers or people. Article 5117, R. C. S., provides a juror shall be disqualified in any particular case "who has a bias or prejudice in favor of or against either of the parties." 1 Bouvier's Law Dictionary, p. 341, defines "bias":

"A particular influential power which sways the judgment; an inclination or propensity of the mind towards a particular object." 5 Cyc. 685.

In the case of Pierson v. State, 18 Tex. App. 558, the court quoted Webster's definition of "bias" and said the juror therein showed he was not indifferent with respect to the defendant. In that case, however, a friendly relationship was shown, and the juror stated he would dislike very much to find the defendant guilty. Withers v. State, 30 Tex. App. 383, 17 S. W. 936. In Railway Co. v. Gilvin, 55 S. W. 985, the juror, we think, manifested about the same bias as in this case and was held disqualified. In Railway Co. v. Blanton, 36 Tex. Civ. App. 307, 81 S. W. 537, the juror denied his friendly feeling for Blanton would influence his verdict, yet he admitted a very friendly feeling for Blanton on account of legal services rendered by Blanton, so much so that the juror named one of his children for him. The court held the juror disqualified. The Legislature has declared that a juror with a bias for either party is disqualified to sit in the case. Bias is a leaning towards a party. In other words, the juror must be a perfect perpendicular between the parties as such and in such situation as to be swayed either one way or another. Hinkle v. State, 94 Ga. 595, 21 S. E. 595. The juror, by his answer, admitting his friendship or leaning for Mrs. Elmore, and that he had no such leaning for the other side, and when all of his testimony is considered, even if he had not stated in terms his leaning, indicated he was biased. If so, the statute says he is disqualified. What he might try to do or believe himself able to do does not occur to us should affect the matter. The statute decides the case.

[6] It is true there are cases in which the statute does not declare a disqualification, which may nevertheless disqualify a juror. In such cases it is in the discretion of the trial court to determine whether the cause is sufficient, and such are the cases cited by appellee. McIntosh v. Railway Co., 192 S. W. 285; Couts v. Neer, 70 Tex. 468, 9 S. W. 40. But it seems to us, when the statute says a certain cause shall disqualify a juror, if the cause is found to exist, that should end the matter. In this case we think there can be no doubt but the juror was not only friendly to appellee, but he had a leaning in her favor, and had no such leaning towards the other party. In the interest of a fair and impartial trial we hold the challenge should have been sustained, and it was error to compel the appellant to accept the juror.

[7] The fifth assignment we think shows error on the part of the court in overruling appellant's first special exception to the answer, which is:

"The pleading shows upon its face that payment of the premium was not made in accordance with the policy, and no reasonable excuse is pleaded in law to excuse or waive payment."

As pointed out by us under the first assignment, there was no specific allegation, pleading a waiver of the terms of the policy, requiring an agent to be in possession of a properly signed receipt. Under the allegations an intendment to so allege may perhaps be inferred under a general exception, but this exception directs special attention to the failure and the omission to specifically allege an agreement of waiver of the limitation of the collecting agent. The burden being on the appellee to plead and prove a waiver of the specific terms of the policy as to paying the premium, it should allege such payment or a waiver or agreement to pay in a definite manner. Insurance Co. v. Hutchins, 53 Tex. 61, 37 Am. Rep. 750; Travelers' Insurance Co. v. Harris (Com. App.) 212 S. W. 933.

The sixth assignment we are not prepared to say presents such error as will require a reversal. However, we believe the pleadings should more definitely point out the agent who made the agreement with the bank to collect premiums on policies. Ordinarily, we should think, as a collector it would have an assigned territory, and it would seem the allegations should show the insured was within the jurisdiction of the collector when the premium was paid. Insurance Co. v. Lacroix, 45 Tex. 158.

[8] The seventh assignment asserts there was error in overruling an exception to appellee's answer to the effect that T. N. Stewart, whom the insured procured to pay the premium to the bank, was acting in the capacity of a double agent. It will be perceived that it is alleged that the insured procured Stewart to place payment in the Laverne State Bank for the benefit of the insurer, and thereafter the bank, acting through Stewart, as assistant cashier, transmitted to appellant at its home office the premium by certificate of deposit. It is urged that, as there is nothing alleged showing that appellant had notice of the fact that the cashier was also acting for the insured, this rendered invalid any agreement in accepting the premium. In the first place, Stewart, as an individual, was acting for the insured, and the bank as agent for the insurer. The mere fact that he was cashier of the bank none the less made his acts in receiving the deposit the act of the bank and charged it as such with the deposit. The bank, being an entity, was authorized to act within its powers as such by its officers.

[9] There was no inconsistency that we can perceive in Stewart, as an individual, paying, as agent for the insured, money to the bank which it had a right to collect for its principal, and, as an officer, making its

obligation to the principal for the sum so collected. It is, of course, elementary law that an agent must not be personally interested adversely to his principal. He cannot represent antagonistic interests, and cannot be agent of both parties in the same transaction. "It may happen that during the negotiations the agent of the insurers in certain particulars may in certain other particulars be empowered by the insured to act for him. So that the same person becomes now agent of one and now the agent of the other contracting party." May on Insurance, vol. 1, par. 125; vol. 2, par. 500 (3d Ed.). If the appellant by contract or its acts made the bank its agent to collect premiums, it must have done so with the understanding its customers in all probability would make arrangements through it to obtain money to make the payments to the insurance company. Such an act would not, it occurs to us, be inconsistent with the interest of the insurer, unless its interest was to force a forfeiture, which in this case it could not do when the premium was timely paid, as authorized. Joyce on Insurance, vol. 2, par. 662; Insurance Co. v. Blum, 76 Tex. 653, 13 S. W. at pages 574, 575. It would seem in the collection of the premiums or in paying it there was not vested any discretionary power in the agent in performing these duties. In either instance the agent performed a ministerial act of paying for one and receiving for the other. If he performed these simple acts, it required no special judgment or discretion. It would therefore seem not to have been such an agency for either party as could well be an abuse of any fiduciary relationship; at least the pleadings show none such. Hill & Son v. Patton & Schwartz, 160 S. W. 1155; 31 Cyc. 1447j.

The eighth assignment will be overruled on the theory that the answer alleges authority of the bank to collect the premium, and in so doing it was the authorized agent of appellant. What has been said heretofore will illustrate our views. If, however, the bank was not agent of appellant, either by agreement, waiver, or estoppel, but in fact was acting as agent of the insured in remitting the money to appellant, a different situation is presented, which under another assignment we will endeavor to notice.

[10, 11] The tenth assignment urges the answer was subject to exception because it shows the payment was made at a time and place and in a manner contrary to article 4741, R. C. S. It is insisted by the appellee that the policy was made in Missouri and delivered in Oklahoma. It is not alleged the policy was delivered in Oklahoma, but the evidence shows that it was. The article provides no policy "shall be issued or delivered in this state" unless it contains certain provisions, one of which provide the policy shall stipulate the premiums shall be paid in advance, either at the home office of the company or to an agent of the company, upon delivering a receipt signed by one or more of the officers who are designated in the policy. If the policy was issued in another state and delivered in a state other than Texas, we think under the statute itself it would seem not to apply to the policy so issued and delivered. However, if the statute applied to this policy, the subsequent agreement or waiver of payment to the agent without a receipt or the failure to give the proper receipt would not make such payment void, if in fact made to the authorized agent of the company. Amarillo National Life Insurance Co. v. Brown, 166 S. W. 658, 665 (12); Life Insurance Co. v. Hopkins, 219 S. W. 254.

[12] The eleventh assignment is overruled, which urges that an exception to the answer should have been sustained to the effect that the plea that the bank was appellant's agent in collecting the premium was in violation of article 4969, which prohibits a corporation from acting as the agent of a life insurance company. Such corporations are prohibited "from soliciting, selling, or in any manner placing life insurance policies or contracts in this state." Certainly the Legislature never intended to prohibit a bank from receiving or collecting the money due a life insurance company. It must be borne clearly in mind that the agent in this case did not seek to change the terms of the policy, but the change, if any, in the terms of collecting the premiums was made by the general officers of the company, either by agreement, waiver, or estoppel—a very clear distinction from a change made by the agent alone, as prohibited by article 4968.

The twelfth assignment should be sustained. The appellant offered in evidence a letter of instructions from appellant company to the Farmers' National Bank of Follett, Tex., dated November 8, 1918, in which it is stated:

"We hand you herewith a list of collections with receipts for same. Collect the amount opposite each name, giving corresponding receipt, noting on the list date when payment is received and return this list with unused receipt. Do not receipt for delinquent payments."

In the list forwarded is the policy sued on, issued to Benjamin F. Elmore? Apparently in a blank space on the letter of instruction was written with typewriter:

"January 5, 1919. Gentlemen: This party we understand died this morning at 6:45 a. m., and we would like to know if there is any way they could recover anything out of this policy. He expected to pay this before the first of the year, but was sick."

Beneath this is apparently a continuation of the letter of instructions:

"Forward all remittances to the company at its Dallas office, 304—8 Wilson Bldg., Dallas, Texas."

There were instructions in the letter to the effect:

A grace of 30 days will be allowed in payment of premiums. Do not accept payments after the days of grace have expired. Note plainly the name and date of payment. If the policy holder fails to take up receipt, note the cause. If he tendered an amount less than given in the letter, notify the company, giving amount and receive instructions.

To the introduction of the remittance slip the appellee objected, because it was immaterial and irrelevant that the notation on the slip as to the death of the assured was not on the slip when forwarded. The court sustained the objection and called upon appellant to say upon what theory it offered the remittance slip. Appellant then stated it offered the slip on the theory that it would show that the company did not know of the death of the insured until after it had written its letter of January 8, 1919, and it did not receive return of the slip until after January 8th; that it was offered in connection with the receipt to show to the jury that the Farmers' State Bank was the authorized agent to collect the premium instead of any person at the Laverne State Bank. The court then excluded the slip. The bill of exception also shows that C. N. Sears, who had general supervision over sending out receipts for collection of premiums and testified in the case, was challenged while on the stand by appellee's counsel to show where the receipt stated it was addressed to the Farmers' National Bank. The witness stated that the slip would show that fact, but the slip was excluded by the court. The policy on its face shows that it was issued to Benj. F. Elmore, Follett, Tex., for the benefit of his wife, and under the general provisions and privileges in the policy it contains practically the statement set out in plaintiff's petition heretofore quoted with reference to the payment of premiums. Mr. Sears testified that he had supervision in sending out premium receipts; that the receipt then offered in evidence was sent to the Farmers' National Bank at Follett, Tex. The receipt appears to have blanks unfilled for the date of the receipt, payment, etc. "Countersigned ————, Collector." It has noted on it: "Benj. F. Elmore, Follett, Texas. Payment may be made to collector, ————. Collectors must not accept receipt for delinquent payments." This receipt and letter of instruction were sent about 10 days before due to the Follett bank. The company had no knowledge of any desire or request on the part of Elmore that he wanted to pay his premium to the bank at Laverne, and the company sent no receipt for collection to the bank at that place. Elmore lived in the region of the Follett bank and not in the region of the Laverne bank, and his address was Follett, Tex. The company never authorized Mr. Crompton, who was the agent of appellant at Laverne, Okl., Stewart, or the State Bank at Laverne to receive payments in the form of certificates of deposit. Appellant undertook to show that the remittance made by the Laverne bank December 28th was not called to his attention until January 8, 1919, when by a letter appellant returned to the bank the certificate of deposit, refusing to accept it as a payment of the premium, and demanding that the remittance be made by the usual exchange. At the time of writing the letter appellant did not know of the death of Elmore, and that it had not yet received the letter of instruction made by the Follett bank of the death of Elmore on the 5th, as noted. He, in effect, denied the authority of the Laverne bank to receive payments of premiums on policies without being in possession of receipts as provided in the face of the policy. The deceased at the time of his death lived in Lipscomb county, Tex., 2½ miles from Follett, and about 30 miles from Laverne, in Oklahoma. It seems from the testimony that Elmore transacted business with both banks before his death. Mr. Crompton, the cashier of the Laverne bank, was the authorized agent of appellant to write insurance, and his agency wrote the policy in question at Laverne, where Elmore was then living, a year and a month before his death. Mr. Crompton and Stewart somewhat differ with reference to the bank's authority to collect premiums for payment. As we understand the testimony, there was a conflict in it with reference to the Laverne bank having authority to collect the premium on the policy without then having in possession the receipt called for in the policy.

[13] The testimony offered and rejected was not immaterial and irrelevant, but bore on the issue. It may have been in its nature self-serving, but we think, as it was contemporaneous with the effort to collect the premium and the authority to collect, that it should be treated as part of the res gestæ. Wigmore on Evidence, par. 1779; Bank v. Ricketts, 152 S. W. at page 648 (3 and 5).

[14] When the secretary, Sears, wrote the letter, he shows he had the same conception of the facts then and before there was any motive which may have been imputed to him at the trial. It was therefore admissible as corroborative of his statement at the trial. Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; Lewy v. Fischl, 65 Tex. 311.

[15] The letter bore on the question of agency and whether the limitation in the policy was waived. Again, it showed how it was that the receipt came to be sent out and who the collector was, which was left blank in the receipt. It was calculated to injure the rights of the appellant to permit the receipt in evidence without the instructions

with it and then to permit counsel for appellee to force the witness to answer that the receipt did not show that the Follett bank was mentioned as the collecting agent.

[16] The notation on the letter or slip of the death of Elmore, after the explanation as to when and how made, ought not to have excluded the letter. This notation was also a fact to be considered in showing when appellant received notice of the death of the insured and as bearing on the question of waiver.

[17] The thirteenth assignment urged that the trial court was in error in rejecting a statute of Oklahoma to the effect that all insurance agents should procure license as such before authorized to act, and, as it had been denied by appellant and pleaded that Stewart was not such agent, the court should have admitted the statute. Without discussing the question further than to say it was alleged by the appellee that the Laverne bank was the collecting agent, and if it in fact was an agent of appellant, it was the duty of appellant to see if a license was required that its agent provided such. It ought not to obtain a forfeiture of a policy because it or its agents violated the law. The assignment is overruled.

[18] The fourteenth assignment will be overruled. This assignment is to the admission of Stewart's testimony to the effect that the bank entered into an agreement with the Oklahoma state agent of appellant to collect premiums and remit the same to the appellant, giving the terms of the agreement. It was objected that agency cannot be proved by the declaration of an agent. Stewart was not the agent, and it is not alleged he was such, but the bank was the agent. Stewart's testimony was not a mere declaration, but was offered as evidence to prove agency. Mechem on Agency, pars. 285 and 291. It is also objected that it was a mere opinion, etc. We do not think it was a mere opinion. Sufficient of the facts were stated to show it was an agreement to collect and sufficient of the terms to determine the authority of the bank.

[19] It may be said in general terms that whatever evidence has a tendency to prove the agency, even though it is not full and satisfactory, is admissible, as it is the province of the jury to pass upon the evidence. Mechem on Agency (1st Ed.) par. 106; Id. (2d Ed.) par. 299.

[20] The fifteenth assignment is overruled. The testimony of the witness is to the effect there was less than $200 on deposit in the bank in appellant's favor at the time of sending out the remittance deposit slip to appellant. The effect of his testimony as to the agreement is that the bank was authorized to hold on deposit in its bank in favor of appellant, a deposit up to $500, and send to the appellant either a check or deposit slip. It is objected the books of the bank or the deposit slip is the best evidence, and that the witness' statement of his memory should not be taken. In a collateral inquiry in which the rights between the bank and appellant were not in issue we see no error in permitting the witness to testify to the amount on deposit when the deposit slip was sent out, if he knew. It would be immaterial how it was remitted by the bank if the bank in the first instance was authorized to collect the premium or how much the bank then had on deposit belonging to the appellant.

The sixteenth assignment is overruled practically for the same reason.

[21] The seventeenth, eighteenth, and nineteenth assignments assail the issues submitted because indefinite, etc. It would avail nothing at this time to discuss these issues. Some of the criticisms in argument and the propositions may be justified. We take it, however, upon another trial the court can and will prepare issues sufficiently definite to get the issues in the case properly before the jury. It may be said as to the criticism of issue No. 4, on the issue of estoppel, that the conduct of the bank and appellant were reasonably calculated to induce policy holders to believe the bank had authority to collect such premiums. It is said by appellant there is no evidence that Elmore relied upon such agreement or conduct or that he knew anything about it. If Stewart was the insured's agent in making the payment to the bank and he knew of such agreement or conduct, such would be knowledge of the principal for whom he acted in paying the money.

[22, 23] The twentieth assignment should be sustained. This assignment is based on objections to issue 5 heretofore quoted. The mere fact that appellant might have accepted the deposit under different circumstances is not a finding that it did so under the existing circumstances of the case. If the bank was not the authorized agent to collect the premium, then payment was required to be in the hands of the home office within the days of grace allowed. A check or certificate of deposit is not ordinarily a payment unless accepted as payment within the time and under the terms of the policy, unless such terms should be waived, or unless the appellant was estopped from refusing it as a payment. Mullins v. Hartford Life Ins. Co., 26 Tex. Civ. App. 383, 63 S. W. 909; Equitable Life Assur. Soc. v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720; Slocum v. Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029; 30 Cyc. 1194. It seems to be the rule that the "tender of a bank check in payment of a premium is good and sufficient when it is refused, not because it is in the form of a check or unlawful money, but on the ground

that the tender was made after a loss, when no right existed to pay the premium." Joyce on Insurance, vol. 2, par. 1125a. In this case it appears the certificate of deposit as a payment was declined because not sent by a customary draft. In other words, the provisions of the policy as to payment were not satisfied. It seems to be held the tender of payment by check is not ordinarily good; yet, if the course of dealings between the insurer and the insured has been to receive payments by check, the insurer would be estopped to say that payment by check was not a sufficient compliance with the policy, and when the place of payment is designated in the policy mailing the check is not payment of the premium until it is received. Insurance Co. v. Hargrove, 131 Ky. 837, 116 S. W. 256. However, it has been suggested by one of our courts, if appellant, by its previous conduct, led the insured to believe that a check would be received as payment, the mailing of it would operate as a payment at the time it was mailed. Travelers' Protective Association v. Roth, 108 S. W. 1039. This case was reversed by the Supreme Court, but on another ground. 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97.

[24, 25] We take it that appellee will be required to show that the deposit certificate reached the appellant before the day of grace expired and was accepted as a payment. As to the proof of reception through the mail we call attention to the Kentucky case, Ins. Co. v. Hargrove, supra. If the certificate was not received until after the day of grace, the policy was forfeited, unless the appellant waived such forfeiture by accepting the premium as tendered. If there was an acceptance of the payment, but this was after the forfeiture, and such acceptance was made in ignorance of the sickness and death of the insured, there would be no such waiver of the forfeiture as would bind the insurer. Joyce on Insurance, par. 1374, vol. 3, p. 2543; Horstmann v. Capital Life Insurance Co., 194 Mo. App. 434, 184 S. W. 1164; Life Insurance Co. v. McAfee, 90 S. W. 216; Wright v. Insurance Co., 221 S. W. 383.

[26] A waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. It is frequently important in cases of this nature to observe the clear distinction between waiver and estoppel. It might occur, if appellant's conduct and dealings were such as to induce the insured or those acting for him to remit in the form adopted in this case, that appellant would be estopped from declaring a forfeiture if it received payment as made in time. Sovereign Camp, W. O. W., v. Putnam, 206 S. W. 970.

[27] As to the manner of payment before forfeiture, we do not hold that it was essential for the appellant to know of the sickness of the insured. If the acts, conduct, or agreement of the appellant with the bank were such as to induce policy holders or their representatives, in paying the premium, to believe that the appellant would accept a deposit in the bank as payment, it may be the manner of payment, from such acts could be inferred, was waived. The question of waiver and estoppel is stated and discussed fully in Equitable Life Assur. Soc. of United States v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Roberts v. Wichita Southern Life Ins. Co. (Com. App.) 221 S. W. 268; Dunken v. Ætna Life Ins. Co., 221 S. W. 691.

[28] Courts are disposed to seize upon slight circumstances to prevent a forfeiture. In the absence of fraud, where a party makes an effort to transmit his premium in time, it would seem that trivial or mere technical objections should not defeat it as a payment when there are acts or conduct on the part of appellant which would induce the insured to omit to follow the strict letter of the policy, and we think that which occurred before as well as after the payment may be looked to on the question of waiver or estoppel as to the manner of payment. It is our view, if the agency of the bank is not established as alleged, then that the appellee was required to show the payment as required or that cash at the home office was waived by appellant's course of dealing and was such as to estop it. The issue, we think, should be so framed as to call for a direct finding on that point.

[29] The twenty-first assignment should be sustained. Appellant requested the trial court to submit the issue substantially: Did the general officers of appellant authorize the Laverne bank or Stewart to collect premiums as its agent, without first having sent to them a receipt for renewal premiums, as provided in the policy? This request was refused. The issues submitted by the court we do not think submit the question whether the bank was authorized to collect without the receipt provided for in the policy—that is, in terms.

Assignments from 22 to 41, inclusive, are based on numerous requested issues which were refused. It would be an interminable task to notice each. We think sufficient has been said on the issues involved in this case in disposing of the preceding assignments to indicate our views.

[30] It may properly be noted at this time that appellant requested issues in effect asking the jury to find whether or not the Farmers' Bank at Follett, Tex., was its authorized agent to collect the premium on the policy when due and payable. It is our view that some issue should have been submitted as to whether the Follett bank was the sole authorized agent to collect. Of course, if

the Follett bank was not alone so authorized, it would not follow necessarily that the Laverne bank had no such authority or authority to collect and was not acting within its powers as agent.

For the reasons above suggested, the case will be reversed and remanded.