## AMERICAN NAT. INS. CO. v. TROSS.

### No. 12845.

Court of Civil Appeals of Texas. Dallas.
Feb. 24, 1940.

Rehearing Denied March 23, 1940.

BOND, Chief Justice.

This suit involves a $1,000 insurance policy, issued by the home office of the American National Insurance Company at Galveston, Texas, upon the life of Francis T. Tross, and payable to his wife, Emma K. Tross, as beneficiary. This policy, dated June 3, 1937, was issued in accordance with the application of the insured, with premiums payable quarterly, on the first day of June, September, December and March; the anniversary date being June 1 of each year. The policy was forwarded to the Company's agent, Mr. McKay, at Dallas, Texas, for delivery to the insured on payment of the initial premium. One of the numerous provisions of the policy reads: "15. Semi-Annual or Quarterly Premiums.

Provided the anniversary date is not changed as a premium due date, the mode of premium payment may be changed from annual to semi-annual or quarterly installments or vice-versa, in accordance with the premium rates endorsed on the cover page of this policy." On the cover page, is endorsed: "Annual Rate $26.58 Semi-Annual Rate $13.82 Quarterly Rate $7.04".

The policy sued on was delivered to the insured on June 15, 1937, at which time, he expressed a desire to avail himself of the privilege granted (as quoted above) of paying the initial annual premium of $26.58, instead of the quarterly rate of $7.04. The agent, McKay, acceded to this request and allowed the insured to pay the premium at the annual rate prescribed on the cover page of the policy, without change in the anniversary date thereof. The agent, who did not then possess an official receipt for payment of an annual premium, evidenced the transaction by changing the words and figures of a quarterly receipt, which accompanied the policy, to show payment of an annual premium. Under such circumstances, the policy was delivered by the agent to the insured and was retained by him until his death on March 5th, 1938.

The case was submitted to the jury on two special issues, and none other was requested. The jury found that the annual premium of $26.58 was actually paid to the agent on delivery of the insurance policy in question; and that $350 was a reasonable attorney's fee to compensate plaintiff's attorney for services rendered. Accordingly, judgment was rendered for plaintiff for the face value of the policy, with 12% statutory penalty, and $350 attorney's fee; hence this appeal.

Appellant's assignments of error pivot upon authority of the Company's delivering agent to accept the initial premium on the policy at the annual rate of $26.58, instead of the quarterly rate of $7.04; and to change the words and figures of the quarterly receipt, which accompanied the policy from the home office, to a receipt evidencing payment of the first annual premium. Appellant bases its contentions on the limitations of the agent's authority, prescribed by Art. 4732, R.S., reading: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: 1. That all premiums shall be payable in advance either at the home office of the company or to an agent of the company upon delivery of a receipt signed by one or more of the officers who are designated in the policy"; and on Sec. 16 of the policy, reading: "16. Premiums, Where Payable. All premiums are due and payable in advance at the Home Office of the Company, but may be paid to an authorized agent of the Company in exchange for a receipt duly signed by the President or a Secretary of the Company and countersigned by the agent named therein. * * *"

The provisions of the statute and limitations on the agent's authority to collect premiums are for the protection of both insured and insurer, to prevent imposition by an unauthorized agent in collecting premiums on a completed insurance contract. To make such provisions and limitations of binding force, there necessarily must be a valid subsisting contract embodying such provisions and limitations.

It is evident, by force of the quoted statute and terms of the policy, that the insured's acceptance of the policy, which evidenced the agent's limitation to collect premiums upon delivery of a receipt signed by one or more of the officers designated in the policy, made such conditions binding upon himself, and visited notice of the agent's limitations. "A party, *after he has accepted a policy* [italicized for emphasis] giving powers to an agent to collect renewal premiums only upon a receipt furnished and signed by the general officers and countersigned by the agent, written in the face of the policy, has notice that the agent's power in collecting is limited". Kansas City Life Ins. Co. v. Elmore, Tex.Civ.App., 226 S.W. 709, 713. However, to bind either party, a consummated agreement must have been entered into and the terms thereby agreed upon by the parties. The policy in suit, by express provision, gave the insured a right to pay the initial premium at either the quarterly, semi-annual or annual rate. The agent, McKay, was entrusted with the policy for delivery to the insured, with authority to collect the premium in accordance with the terms of the policy, thus effectuating a complete agreement between the insured and the insurer on terms expressed in the policy. The insured elected to pay an initial annual premium of $26.58, instead of a quarterly premium of $7.04, which, under the terms of the policy, he had an absolute

right to do. Thus, relying upon the agent's authority to collect the initial premium, he paid the annual premium as found by the jury, which, we think, is amply supported by evidence. It can safely be said that, if the Insurance Company entrusted the policy to its agent for delivery to the insured, and the policy allowed the insured to pay the first premium quarterly, semi-annually, or annually, and the insured, relying thereon, paid the premium to the agent, the insurer cannot be heard to say that such agent had no authority to collect. As the policy was delivered to the insured on payment of the annual premium, it is immaterial whether the agent delivered to insured an official receipt, other than to evidence payment of such premium. The conditions of the policy, on delivery, became the obligations of the parties during the life of the policy, irrespective of the delivery of an official receipt. The insurer could not escape liability, even though no receipt was ever issued, if proof is made that the initial premium was actually paid, thus bringing the contract into being. Because, forsooth, the agent failed to account to his principal for the premium paid (as disclosed by the evidence), or changed a receipt which accompanied the policy for the initial premium, the obligation of the insurer is not affected. The payment of the initial annual premium carried the policy over to the next anniversary date. Provisions in life insurance policies, limiting the agent's authority to collect premiums when possessed with official receipts signed by designated officials of the Company, ordinarily apply only to the collection of renewal premiums; such cannot apply to agents having authority to deliver policies and collect the initial premiums provided therein, to carry the policies into effect.

In Lauze v. New York Life Ins. Co., 74 N.H. 334, 68 A. 31, an insured, at the time of delivery of the policy, paid the soliciting agent the first premium (which, it was admitted, he had a right to receive), and the policy involved there, as in the instant case, provided that the premiums must be paid at the home office, unless otherwise provided, and, in any case, in exchange for an official receipt signed by certain designated officials. It was held that the payment of the *second premium* to the soliciting agent, without the production and delivery of the receipt described in the policy, was not such a payment as would bind the insurer. So, in the case at bar, the deliver-ing agent had power to collect the initial premium; the policy provides that the initial premium may be paid quarterly, semi-annually, or annually, leaving it to the exclusive discretion of the insured as to the mode of such payment. Thus, we think, the insured, having the right to exercise such privilege, and the agent having been clothed with authority to consummate the transaction by delivery of the policy on payment of the premiums therein provided, the Insurance Company cannot escape liability because of the agent's lack of authority to improvise a receipt by changing words and figures of an official receipt showing the true transaction.

In the light of the record, our final conclusion is, that the insured having been granted the right to pay the first premium either quarterly, semi-annually, or annually, under the express terms of the policy, and the first annual premium having been paid, as found by the jury, and the policy delivered, the policy became an enforceable obligation on the death of the insured; accordingly, appellant's assignments are overruled, and the judgment of the court below is affirmed.

Affirmed.