**LUMBERMEN'S INSURANCE COR-
PORATION, Appellant,**

**v.**

**Archie F. GOODMAN, Appellee.**

**No. 6124.**

Court of Civil Appeals of Texas.

Beaumont.

June 6, 1957.

Rehearing Denied June 26, 1957.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Nacogdoches County in a Workmen's Compensation case, in which appellee, Archie F. Goodman, was awarded benefits for total and permanent disability against the appellant, Lumbermen's Insurance Corporation.

The evidence was that the appellee suffered an injury to his back when he tripped and fell over a piece of lumber while walking across the employer's premises at night. The whole controversy, both in the trial court and on appeal, is over the extent and duration of appellee's disability. The appellee summarizes the evidence in support of the verdict and judgment as follows:

The injury occurred January 6, 1956, and was severe enough to prevent him from walking at all. Dr. Bennett jerked his hip on the X-ray table and it "popped". The trial was approximately nine months later, and appellee's condition has not improved but seems to be getting worse. He cannot bend without pain, and he has a limp which he did not have before. He never had any back trouble before. Walking makes his back hurt. An awkward step causes his right leg to give way. Sitting in one position causes his back to hurt. His wife testified at night he is unable to sleep and gets up. Both specialists said his true condition depends upon his credibility and they considered him sincere. Dr. Stephenson so testified, and Dr. Brodsky said the same thing. Dr. Brodsky's diagnosis was back sprain in connection with pre-existing osteo-arthritis. He said appellee has evidence of a disk lesion, but he is unwilling to specifically make such diagnosis on a basis of the findings. Dr. Brodsky's use of the term, "back sprain", was described as

a cloak of partial ignorance as to the true nature of the injury; it could mean a disk or other different conditions. The spot of maximum tenderness was near the lumbo-sacral junction, according to Dr. Brodsky and Dr. Stephenson. The large spur was found just above it. The substance of Dr. Brodsky's testimony was that appellee had pre-existing osteo-arthritis which could have been aggravated by the injury; that he was unable to determine the exact nature of the damage and, therefore, called it a back sprain; that, if appellee hurt as he said he did, he was unable to do manual labor. As to the length of the disability, Dr. Brodsky said he would have some permanent disability, but he did not know the degree. He did say it was "within the realm of medical probability" that appellee would not get one hundred percent well but would be left with a "residue of pain" on exertion in doing heavy work from time to time.

Dr. Stephenson, in answer to a hypothetical question, said that if such hypothetical person did not respond to treatment, "we might assume that it would be permanent" and that he could not fix a time for recovery.

It is noted that two medical experts testified on the trial; that Dr. Brodsky did not go so far as to say that Goodman's disability would be total and that Dr. Stephenson testified that he thought Goodman was well enough to return to his former job. It is because of this conflict in the evidence in regard to the extent and duration of appellee's disability that we regard the procedural errors of the trial court in the formation of the jury in the case to be of the utmost importance in deciding this appeal. It was the jury's task to decide these conflicts in the evidence, and in this instance everything was resolved by the jury in appellee's favor. Appellant's complaints about the trial court's rulings on questions arising during the formation of the jury therefore require a detailed examination of such complaints.

By its 5th and 6th points the appellant complains that it was deprived of a fair and impartial trial when the trial court held that the prospective juror Gibson was a qualified juror, over the appellant's challenge for cause, after Gibson testified on examination that he was of the opinion that if a Workmen's Compensation claimant claimed compensation he was either entitled to all or nothing, and after Gibson also testified on examination that he was of the opinion that when a Workmen's Compensation claimant paid the premium, if he claims he was injured and produces any evidence, he is entitled to all he is claiming. Gibson's name appeared Number 6 on the jury list, and after the appellant's challenge for cause was overruled Gibson's name was stricken by the appellant in exercising one of its six peremptory challenges. Appellant showed on the hearing on its motion for a new trial that if it had not been required to exercise one of its challenges on Gibson it would have been able to and would have challenged Vernel Gunn, a colored girl that had had previous claims for Workmen's Compensation benefits, and she served as a juror.

The appellant's bill of exception No. 1 shows that the following testimony was given by the prospective juror Gibson on his voir dire examination:

"Q. Your second difference was that, in your opinion, if you believed from the evidence that the man got an injury, that your opinion is that he is entitled to either all of it or none of it? A. I feel that if a man pays his paying dues on insurance, he is entitled, and, as I said, insurance companies often get off light without paying what the man is entitled to.

"Q. Do you feel that so strongly that you would require this insurance company to produce evidence to the fact that the man is not entitled to all of it? A. Yes, I would.

"Q. In other words, if the man claims he is hurt, you are going to believe him and if the insurance company does not produce any evidence, he is entitled to all of it? A. I believe I have already answered that, sir. I said if the evidence produced the man was hurt from that that he was suing for, that if he has paid for the insurance, I believe he is entitled to receive full benefit of it.

"Q. You understand that an employee on a Workmen's Compensation job does not pay any of the premium on Workmen's Compensation insurance? A. I think Mr. Fulmer answered that, and it is already figured out in their pay.

"Q. Well, that is an incorrect statement. The employee does not pay any of the premiums on Workmen's Compensation. Q. It is your belief, though, that under the Workmen's Compensation Law, the man does pay the premium? A. If I understand it right, yes.

"Q. And in view of that belief, you think that, since he pays the premium and if he claims he is injured and produces any evidence, he is entitled to all of it? A. Yes.

"Mr. Zeleskey: I believe he is disqualified, Judge.

"By Hon. Vernis Fulmer:

"Q. Let me ask you a question. Mr. Gibson, are you saying that, if a man gets hurt on the job where there is insurance, that you think he is entitled to everything he sues for, regardless, or do you mean that you think he is entitled to everything that the evidence justifies him to have? A. I stated that in the beginning, that if the evidence justified, if he is permanently disabled, give him everything he is—

"Q. That is as you said, if the evidence shows and you believe from the evidence he is permanently and totally disabled, give him everything the man asks for, but if you believe from the evidence he is just disabled for ten weeks, would you just give him that amount? That is the point, see. A. Yes.

"Q. If you believe he wasn't hurt at all, you would find he wasn't hurt? A. Sure, I am under oath to that effect.

"Q. And if you believe he was hurt and wasn't entitled to total disability but just partial, you would go according to the evidence on that? Would you go according to the evidence on everything? A. The evidence is first, yes, sir.

"Q. You understand that law fixes a limit, a maximum limit that he can get under whatever evidence is produced, and the point the Judge wants to know is whether you are going to take the oath here and stick with that and follow it as best you can. That is all anybody can do. As best you can, to follow the law as he gives you and the directions in the charge and the evidence that comes from the witness stand. A. That is the reason I took my oath.

"Q. And the fact that you know of some cases where the insurance company got off light, you don't mean to let that play any part in this particular case? A. No, I would go according to the evidence.

"Q. You would go according to the evidence? You will discard any talk you heard from the barber shop, anything you ever knew or any personal experience you had, if you had any, and try it on the law and the evidence here? A. I merely answered that on the question you asked Mr. Barrett, did he know of any occasion or thought any company got off light.

"Q. On the other hand, do you know of some cases where you thought maybe the fellow got to the insurance company a little when he wasn't entitled to it? A. Off hand, I don't think. It's possible that is true.

"Q. Would you let either one of those prejudice you in this case, or would you try this purely upon the facts in this case? A. The evidence.

"By Hon. Ralph Zeleskey:

"Q. If Mr. Goodman testified he had this injury and he can't work and they produce a doctor that says he can't work, are you of the opinion that you would require this insurance company to show you that he wasn't hurt and not entitled to anything?

"Mr. Fulmer: I want to state, Judge, that that is not a proper question, let him state in the question the hypothesis that another doctor testified that he could work.

"Court: I am going to sustain the objection. Mr. Gibson, are you testifying now that, if you were taken on this jury and you believed that this man here, this plaintiff here, was injured, that you would give him all you could under the Court's charge, regardless of the evidence? A. If he was injured and proved the injury, proved with the evidence and the Court, I would give him everything that he was asking for, as I stated in the beginning.

"Court: If he proved to you he was totally and permanently disabled, you would give him total and permanent disability under the Court's charge? A. I would.

"Court: If he failed to prove that he was totally and permanently disabled, would you—even though he proved he received an injury, even though this man proved he received an injury, but he failed in your opinion to prove to you that he was totally or permanently disabled, would you follow the court's charge and give him something less than total and permanent disability? A. If he didn't prove substantial evidence, I would say don't give him nothing. Just the way I feel about it.

"Court: If, under the court's charge, you have the authority to grant partial disability for so many weeks, would you follow that portion of the court's charge and grant him—would you follow that portion of the court's charge and grant him disability for the number of weeks you thought he was entitled to? A. May I ask this? Are we trying this man for so many weeks or for total disability?

"Court: You will have an opportunity, under the court's charge, to find total and permanent disability, if you so find from the evidence, or you will have an opportunity, under the court's charge, probably to find that the man might be partially disabled for a certain percentage or for a number of weeks, or you will have an opportunity to find that he wasn't disabled at all. Now, then, I want to know, have you got your mind made up on this, and if taken on the jury, the man proves he is injured— have you already got your mind made up to give him the maximum that you can give him, or would you give him what you thought he was entitled to? A. If he proves himself with the proper evidence, I would say give it to him, yes.

"Court: All right. If he proved it? A. Yes.

"Court: If he failed to prove he was totally and permanently disabled—A. I have answered that already, sir. All or nothing.

"Court: You wouldn't consider giving him any partial disability, disability for a certain number of weeks? A. That comes back to the question a few minutes ago, total or partial. Is that for the court to charge us with?

"Court: If the Court charged you—A. I would have to go by the court's charge.

"Court: If he was partially disabled, would you follow that if you thought he was partially disabled and give him some partial disability? A. I guess I would have to follow the court's charge.

"Court: Would you do that? A. Yes, sir, under my oath, yes, sir.

"Mr. Fulmer: Here is the thing. He said two or three times, when he is saying all or nothing, he means all the evidence calls for, and you are thinking of all the law. A. Both of them got to go together.

"Mr. Fulmer: You are thinking of the maximum under the law, and he is thinking of the maximum under the evidence.

"Mr. Zeleskey: That's not what he said.

"Mr. Fulmer: I think he did say that. A. My statement is that if a man is suing this insurance company for a certain amount of money, if he proves with the proper evidence he was hurt and proves the proper injuries with the evidence, give the man all he is asking for, or if he doesn't prove it, don't give him nothing.

"Mr. Fulmer: Or if the proof shows he is entitled to any certain figure in the middle, you would follow that? A. According to the charge of the Court and the evidence.

"Court: If the Court charged you that you could have an opportunity to find, under the Court's charge, that the man was disabled for a certain number of weeks, could you write a verdict that you thought he was disabled for a certain number of weeks? A. Well, sir, my understanding, he has to prove whether he is disabled totally or for just a certain number of weeks.

"Mr. Fulmer: That's right.

"Mr. Zeleskey: If he says he is and the doctor says he is, are you going to believe them, regardless of the other evidence? A. That is the evidence.

"Mr. Zeleskey: In other words, if another doctor—if the insurance company produces a doctor that says he is not, you are going to believe the plaintiff and his doctor when they say he is total and permanent? A. I've got to go according to my oath and the charge, according to what the court charges us to do.

"Mr. Fulmer: You've got to wait to hear it before you know whether to believe him?

"Court: You will listen to both sides in the case? A. To the evidence, sure. That's what I told Mr. Fulmer out there. He done asked another man, see, and I didn't know whether to interrupt or not.

"Court: Do you believe you could return a verdict, if you found under the evidence—if you found he wasn't totally and permanently disabled— A. If he wasn't.

"Court: If he wasn't, but you further found he would be disabled for, say, 50 weeks or 100 weeks, could you return a verdict that he would be disabled for 50 weeks or 100 weeks? A. According to the charge of the court, yes.

"Court: Or would you say you would give him nothing? A. According to the charge of the Court.

"Court: I am telling you now that the Court will give you an opportunity to say if he is partially disabled.

"Mr. Fulmer: Follow not only the charge but the evidence, too.

"Court: It will be up to you. A. That's just repeating over. If he gave me the evidence he was hurt, I would say give him all of it or nothing.

"Court: Regardless of how bad? A. If he is totally disabled.

"Court: I will understand if he is totally disabled, you will say he is totally disabled, but supposing he has 50 percent total disability, would you say that? If you found he has 50 percent total disability, could you say 50 percent total disability? A. If there was anywhere you could figure it in the charge that way.

"Court: You could say 50 percent total disability? A. I would have to, yes. Under my oath, I would have to.

"Court: And if you thought he was disabled for ten weeks and that was all, could you say he was disabled for ten weeks? A. According to the evidence, yes, sir.

"Mr. Fulmer: He's qualified, Judge, just like everybody else. He doesn't understand the terms.

"Court: You understand, the jury has a great deal of latitude to do whatever they think is right? A. That's why I brought this up. I want my feelings understood. I can't go in there under oath, because I wouldn't want you to do it on one of my cases.

"Court: I am going to hold Mr. Gibson is qualified.

"Mr. Zeleskey: The defendant challenges Mr. Gibson for cause under his testimony. Note our exception to the Court's qualifying him."

We believe it is apparent from Mr. Gibson's answers to the questions propounded to him, both by counsel for appellant and counsel for appellee and by the Court, that he definitely had a bias and prejudice in favor of the appellee and against the appellant. This state of mind existed not against this particular defendant or for this particular plaintiff in the trial court, but against all compensation insurance companies being sued and in favor of claimants in such cases. He made no effort to conceal this feeling which he harbored, and freely expressed himself as feeling that if a claimant claimed he was injured and produced evidence to support the claim, then he should be awarded all he was suing for. He repeated several times that he would say "give him all of it or nothing." He did say that if a man had 50 percent total disability and he found 50 percent total disability that he could say 50 percent total disability, "if there was anywhere you could figure it in the charge that way." He added that he wanted his feelings understood, that he couldn't go in there under oath because he wouldn't want one to do it in one of his cases.

We think the court erred in overruling appellant's challenge for cause and holding Mr. Gibson qualified. In this country, where fair and impartial jurors can be had so readily, there is really no reason why questions of this character should arise, and in all cases where there is a possibility for serious doubt as to the impartiality of

a juror, from whatever cause, the Court, in the exercise of the discretion conferred upon it, should properly discharge him. Pierson v. State, 18 Tex.App. 524.

■ If it develops that a juror has bias or prejudice, his affirmation that he can set this aside and try the case fairly upon the law and the evidence should be disregarded, and he should be excused upon challenge. McDonald's Texas Civil Practice, Vol. 3, p. 978, citing Kansas City Life Ins. Co. v. Elmore, Tex.Civ.App., 226 S.W. 709. The effect of the trial court's holding that Gibson was qualified to serve as a juror in the case amounted, under the circumstances, to a denial of the appellant's right to six peremptory challenges, allowing it, in fact, only five. We sustain Points five and six.

■ We overrule the appellant's Points Nos. 1, 2, and 3, by which it complains that there was no evidence to support the jury's verdict of permanent total incapacity, that there was insufficient evidence to support such verdict and that such verdict was against the overwhelming weight and preponderance of the evidence. We will not discuss the evidence in detail, but merely point out that the evidence was conflicting but was sufficient to support the jury's verdict and the judgment of the court.

■ By its 4th Point the appellant complains of the trial court's exclusion from the evidence of the written report of Dr. McKinney filed with the Industrial Accident Board by the appellee. In such written report Dr. McKinney expressed his opinion that the injury suffered by appellee "should resolve itself within six months". Appellant says that this instrument should have been received in evidence because it was the doctor's report filed by appellee's attorneys, and, therefore, was an admission by adoption of the truthfulness of such statement. Appellee maintains that the statement was not admissible because it was not a statement in regard to an exist-

ing fact, but was an opinion, conclusion and prediction as to the time in the future when appellee's injury would be healed; that admissions contained in such statements in order to be admissible must relate to matters of fact and not as to opinions or conclusions or predictions. We agree with the appellee and overrule this point on the authority of Texas General Indemnity Company v. Scott, 152 Tex. 1, 253 S.W.2d 651.

■ By its 7th Point the appellant complains of the trial court's action in holding a prospective juror qualified, when he had a claim pending similar to that of appellee, that attorneys for appellee in this case represented him in his suit and one of the attorneys for appellant here represented the insurance company in his case. This contention is overruled on the authority of Texas Employers Ins. Ass'n v. Godwin, Tex.Civ.App., 194 S.W.2d 593.

■ Appellant's 8th Point complains of the trial court's action in permitting the witness Wilson to testify that the appellee Goodman made certain statements to him that he fell down and hurt his back, when such statements were made at a time when Goodman had had opportunity for calm deliberation and such statements did not constitute a part of res gestae. We overrule this point and hold that the statements were res gestae. Goodman was apparently still in pain when he talked to Wilson, and the conversation took place within a short time after Goodman said he got hurt.

■ Appellant's 9th, 10th, 11th and 12th Points complain of the trial court's action in permitting the appellee to testify "that he couldn't walk even if his life depended upon it at that time", "that his walk around the courthouse was not any different than what it was at other places when nobody was looking at him." These points present no error. As we view the testimony complained of, these were merely words and phrases used by Goodman himself to describe his physical condition. The objec-

**146**

tion of the appellant that such statements were self-serving does not appear to us to state a valid objection under the circumstances, since practically all of the testimony of any plaintiff is intended to be self-serving. If a plaintiff is precluded from giving testimony which was self-serving, he would find himself in quite a predicament when called upon to testify in his own behalf.

Appellant's Points Nos. 13, 14, and 15 complain of argument of appellee's counsel to the jury and Point No. 16 is that the cause should be reversed and remanded because of the numerous acts of misconduct by counsel. The first argument complained of was a statement by counsel for appellee that he doubted that the appellant company had paid Dr. Bennett's bill. This, of course, was improper and when objection was made the court sustained the objection and instructed the jury not to consider. Counsel, however, after such ruling by the trial court, gave his reasons to the jury why he thought the doctor had not been paid by the insurance company, such reasons being that honest men pay all their bills and dishonest people don't pay any. No objection was thereupon made by counsel for appellant and we have doubt whether this point shows error. Since the case must be reversed and remanded because of the error above pointed out in the selection of the jury, we think it proper, however, to advise counsel that such argument was clearly improper and if objection had been made such an unsupported accusation of dishonesty would have been ground for reversal

■ The other argument complained of was counsel's statement that appellant "should have brought a law here and showed the jury that a man has to have a witness present before he can get hurt on

a job and collect his money." We find no error in this point. It is not, as is contended by appellant, a comment upon the failure of an opposing party to produce witnesses. Counsel for both parties had argued to the jury that the appellee, himself, was the only one who could actually testify as to how he got hurt and we view the argument as merely a strenuous urging on the part of counsel to the jury that the law does not require a party to produce a witness other than himself in order to prove a case.

The other argument was as follows:

"No. 7, then—oh, how they would like for you to cut the total short of permanent and say so many weeks and then answer no to partial. Yes, they would really like something like that. They would be happy if you would write in one week of partial. I can't tell you why. Some day maybe you will know why. If you didn't write but just one week of partial, they would be happy and write 400 weeks of total. That's a foolish state of affairs, but it's not so foolish when you know what I am talking about. They're sincere about it. They're trying to put it over, anything to get it over."

■ This argument contains a veiled charge that the appellant was guilty of some undisclosed vice in arguing that appellee had no partial disability and that counsel for appellee could not tell them about it. This argument, in that sense, was improper, but standing alone would not be so vicious as to require a reversal. In view of the fact that the case must be tried again, we trust by this holding such statements will be eliminated on another trial.

For the error above pointed out, the judgment of the trial court is reversed and the cause is remanded for another trial.