Kay **FORTUNE** et al., Appellants,

v.

**SWAP SHOP** et al., Appellees.

No. 3902.

Court of Civil Appeals of Texas.

Waco.

Nov. 30, 1961.

Rehearing Denied Dec. 21, 1961.

Adams & Browne, Beaumont, for appellants.

Orgain, Bell & Tucker, Beaumont, for appellees.

WILSON, Justice.

In a collision between meeting vehicles, the parents of minor plaintiffs were killed. The jury found the collision was proximately caused by negligence of defendant truck driver in failing to keep a proper lookout, failing to yield the right of way while attempting to make a left turn and driving his truck while intoxicated. It was found defendant's truck was not being operated on the left side of the highway, and defendant did not fail to keep the truck under proper control. The jury also found negligence of plaintiffs' father in driving at an excessive speed and in excess of 60 miles per hour, proximately caused the collision.

Appellants say there is insufficient evidence, or none, to support the latter find-

ings relating to speed and causation. The chief argument is that expert opinion evidence to the effect that decedents' car was travelling at a speed in excess of 80 miles per hour, introduced without objection, was based on a reconstruction from investigation several days after the accident in which it was assumed the asphalt pavement of the highway was dry; whereas the other evidence, including defendants' admission, was that it was damp or wet. If it should be said the weight and credibility factors were not for the jury, and this evidence should be disregarded, the remaining testimony as to speed, introduced without objection, was that of highway patrolmen called by plaintiffs. One of these testified the vehicle was moving at a speed of "at least 50", was going "faster than 50", and "could have been going" 80 miles per hour. This witness stated he found nothing in his investigation to lead him to conclude "they were driving over 60." The other patrolman testified that in his opinion from what he "found out there" as a result of investigation made shortly after the collision and before the cars were moved "he was travelling about 60 miles an hour." The opinion of these witnesses was based on existence of a "damp" or "wet" highway surface. The car left approximately 123 feet of skid marks. The evidence indicates this automobile skidded to its left so as to cross the center line of the highway to collide with defendants' truck. We think this and other evidence supports the findings.

■ Irreconcilable conflict between affirmative findings as to speed, and a negative finding on the issue of failure of decedent to keep his automobile under proper control is asserted. It is held there is no irreconcilable conflict. Kimble v. Younger Bros., Tex.Civ.App., 283 S.W.2d 254, 255, writ ref. n. r. e.; Dorsey v. Younger Bros., Tex.Civ.App., 216 S.W.2d 294, syl. 3; Harrison v. King, Tex.Civ.App., 296 S.W.2d 344, 346, writ ref. n. r. e.; Holly v. Bluebonnet Express Co., Tex.Civ. App., 275 S.W.2d 737, 741, writ ref. n. r. e. As to proper control, the proximate cause

issue, conditionally submitted, was unanswered. See Little Rock Furn. Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991.

■ Appellants urge the finding on a discovered peril issue, that defendant truck driver did not realize in time that deceased could not or would not probably extricate himself from his peril, is against the undisputed evidence. Defendant driver testified he signalled for a left turn, swung to his right and turned left toward the center line, "and I realized this car was approaching too fast for me to make the intersection, and I stopped." At that time decedents'. car was 150 to 200 feet away. Defendant driver says he stopped at the line, and the jury finding sustains his testimony. The car began skidding while about 175 feet from defendant's truck. There is evidence to show that there was ample room for decedents' car to pass in a ten foot paved lane with an eight foot adjacent shoulder. The time available was little more than three seconds under favorable evidence in support of the finding. There is no direct testimony on the realization issue. This point is overruled.

■ A more difficult point is assigned concerning overruling appellants' motion to declare a mistrial. After the jury was impaneled and before the pleadings were read or evidence begun, a juror advised the court that he had discovered defendant was the father-in-law of "a good friend of his", and he "kind of felt uneasy with me on the jury." He testified in chambers he didn't think this would affect his verdict; "Here's the only thing I would think about: in case the man does lose the case, being on the jury, what effect it would have on my friendship with his son-in-law. That's just straightforward." In answer to the court's question he then said he felt he could be guided by the evidence and the charge. "Counsel: You say you worry about how your friend would feel? Juror: That's the whole thing right there. As for myself, I don't think it will; I can take the evidence and give a fair judgment on

the case. But what effect will it have on my friendship between his son-in-law? Because we hunt together quite a bit, and I would hate to lose a friend over something like this. I realize it is throwing a monkey-wrench in the case. You all will have to re-pick a jury." He then stated he didn't think "maybe losing his friendship" would affect him. "If he is a good enough friend, which I think he is, it would have no effect on his friendship." Again insisting these facts wouldn't affect him: "The only thing I am kind of worried about is how my friend would feel about it. As far as myself, I'm willing to keep on with it, go all the way with it." He said he would wait until he heard the evidence to make up his mind. On cross-examination he said "it wouldn't bother him" that he "might lose his friendship."

The court certifies to us that five days after the jury was impaneled the jurors were brought into court, and inquiry was made as to whether the jury could reach a verdict. This juror "spoke up and emphatically stated he doubted it. You'd be surprised which issue we're on now." He further certifies that when this juror failed to agree with others at 9:00 P.M. as to type of sandwiches desired, a woman juror said to him, "You have to be different about everything." The court also certifies this juror said the son-in-law was his best friend and hunting partner and he was worried. He tells us plaintiffs' counsel was not apprised of such facts on voir dire examination.

This is not a case in which information relating to a juror's attitude is developed by post-trial probing after a case is lost. It is not a case in which the court has over-ruled a challenge for cause, leaving counsel an opportunity to make tactical effort to disqualify an unfavorable prospective juror. Here, counsel was confronted with the reality the juror was a constituent of an impaneled jury, with whom he was compelled to deal with tact and discriminating caution. It was then too late for counsel to take

secondary protection in a peremptory challenge. It was not even a case in which evidence had been adduced, and time of court, jury and litigants had been needlessly consumed. The court certifies that other veniremen were available on a panel from which another jury could have been selected.

It may be thought difficult at best to induce veniremen to recognize and acknowledge the elusive conscious or subconscious influence, motive or attitude which may predispose reaction to conflicting evidence. Here the juror examining his inmost thoughts, and having reflected on his own qualification, realizing his admission will "throw a monkey-wrench in the case", candidly tells the court he is worried and "uneasy" about the effect on his friendship with his best friend and hunting companion who is related to defendant, if defendant should lose the case.

In such a situation it is held the affirmation of a juror "that he can set this aside and try the case fairly upon the law and the evidence should be disregarded." Lumbermen's Ins. Corp. v. Goodman, Tex.Civ.App., 304 S.W.2d 139, 145, writ ref. n. r. e.; Kansas City Life Ins. Co. v. Elmore, Tex. Civ.App., 226 S.W. 709, 715; Texas Cent. R. Co. v. Blanton, 36 Tex.Civ.App. 307, 81 S.W. 537; 3 McDonald, Texas Civil Practice 978; 26 Tex.Jur., Secs. 178, 188, pps. 747, 753. We think the record shows this juror frankly admitted he was not such an impartial juror as the parties were entitled to, and appellants' motion should have been sustained.

■ Appellee says the record disclosing the foregoing facts is not properly preserved because they are not contained in a statement of facts or formal bill of exception. Rule 372, Texas Rules of Civil Procedure, provides that no particular form of words shall be required in a bill of exception, and that where the ruling or action of the court appears otherwise of record, no bill shall be necessary to reserve an ex-

ception thereto. The record presented is a certificate authenticated by the trial judge attesting events which occurred. This is a bill of exception. 4 Tex.Jur.2d Sec. 489. Reversed and remanded.