The SWAP SHOP et al., Petitioners,

v.

Kay FORTUNE et al., Respondents.

No. A–8827.

Supreme Court of Texas.

Jan. 23, 1963.

Rehearing Denied March 13, 1963.

**152**

———◆———

Orgain, Bell & Tucker, Beaumont, of Cleve Bachman and Gilbert I. Low, Beaumont, for petitioners.

Adams & Browne, Beaumont, for respondents.

HAMILTON, Justice.

This is a death action brought by the children of a man and wife who were killed when their automobile collided with a truck owned and driven by an employee of defendant, owner of The Swap Shop. On jury findings favorable to the defendant the trial court gave judgment to the defendant. The Court of Civil Appeals has reversed and remanded. 352 S.W.2d 148. The Swap Shop is petitioner here.

On the day after the jury had been empaneled, but before any evidence had been introduced, one of the jurors, Boudoin by name, went to the trial judge and told him that he had just discovered that the defendant in the case was the father-in-law of a close friend and hunting companion, and that he was concerned about the effect his being on the jury might have on that friendship if the verdict were to go against the defendant.

The trial judge conducted a hearing on the matter in his chambers, after which respondents made a motion for mistrial on the ground that a fair trial could not be had with the juror Boudoin on the jury. The trial court overruled the motion for mistrial and the case went to trial before the jury. The jury found against the petitioners as to negligence and proximate cause in several respects. It also found respondents' father was contributorily negligent in driving the automobile at an excessive rate of speed and that his negligence was a proximate cause of the death of himself and the mother of the respondents. The trial judge entered judgment for the petitioner on the verdict of the jury.

In respondents' appeal to the Court of Civil Appeals they contended that the juror Boudoin was as a matter of law biased and was therefore, under Article 2134, Vernon's Ann.Civ.St., disqualified to serve as a juror. The Court of Civil Appeals upheld this contention and reversed the judgment of the trial court. We disagree with this holding and reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The testimony taken at the hearing held by the trial judge on the qualifications of the juror in question was transcribed and the record certified by the court reporter, and this record was attached as an exhibit to respondents' motion for mistrial. In his order overruling the motion for mistrial the trial judge attests to the correctness of all the recitations of fact in the motion for mistrial. The record of the interrogation of the juror Boudoin is quoted in full below:

"THE COURT: I have advised the attorneys that Mr. Boudoin told the Court this morning that he did not know yesterday afternoon of any friendship or acquaintance at all with Mr. Dore, but last night he learned from his wife that Mr. Dore is the father-in-law of a good friend of his.

"JUROR BOUDOIN: The name stuck in my mind, but I asked my wife and she said, 'you ought to know him; he is a good friend of yours's father-in-law.' And I kind of felt uneasy, with me on the jury; I felt like I ought to tell you all this morning.

"THE COURT: Basically, of course, as the attorneys have explained, both sides are entitled to a fair trial.

"JUROR BOUDOIN: That's right.

"THE COURT: Do you think your knowing this defendant would in any way affect your verdict?

"JUROR BOUDOIN: Actually I do not. Here's the only thing I would think about: in case the man does lose the case, me being on the jury, what effect it would have on my friendship with his son-in-law. That's just straightforward.

"THE COURT: Of course, you will be instructed in the law of the case that you will have to be guided by the evidence and the law the Court gives you. Do you feel like you can do that?

"JUROR BOUDOIN: I do.

"THE COURT: Do the attorneys have any questions?

"MR. BROWNE: I would like to ask him this: You say you worry about how your friend would feel?

"JUROR BOUDOIN: That's the whole thing, right there. As far as myself, I don't think it will: I can take the evidence and give a fair judgment on the case. But what effect will it have on my friendship between his son-in-law? Because we hunt together quite a bit, and I would hate to lose a friend over something like this. I realize it is throwing a monkey-wrench in the case; you all will have to re-pick a jury.

"MR. BROWNE: Do you think, feeling like you say here, maybe losing his friendship, do you think that would affect you?

"JUROR BOUDOIN: No, I don't think. If he is good enough friend, which I think he is, it would have no effect on his friendship. But that is the only thing. As far as giving a just verdict on the man, I don't think it would have any bearing whatsoever.

"MR. BROWNE: It wouldn't bother you that you might lose his friendship?

"JUROR BOUDOIN: No, sir.

"QUESTIONED BY MR. BACHMAN:

"Q. You don't think it would affect you one way or the other?

"A. Like I say, the man himself, I don't even know the man. He's a total stranger to me. The only connection with him, is by his son-in-law.

"Q. What you are saying is that you would listen to the evidence, and if you felt under the Court's Charge the evidence justified your finding one way, you would go that way, and this wouldn't affect you?

"A. No, it wouldn't.

"Q. You wouldn't bend over backwards, to go the other way?

"A. No; as I say, the only thing I am kind of worried about is how my friend would feel about it. As far as myself I'm willing to keep on with it, go all the way with it.

"Q. You are willing to wait until you have heard it and make up your mind, whatever it is, one way or the other?

"A. That's right.

"THE COURT: As Judge Lord probably told you yesterday in empaneling you, of course, you understand you don't find for or against anybody. It's just certain questions which will be submitted, and that is your sole duty under the evidence, to answer the questions under the Court's charge. You don't find for or against anybody.

"JUROR BOUDOIN: I could do that.

"MR. BACHMAN: I'm satisfied.

"MR. BROWNE: I'll have to talk to my client, Judge."

■ The trial court, in overruling respondents' motion for mistrial based on this testimony, impliedly held that the juror was not biased or prejudiced. Said Article 2134 provides that any·person who has a bias or prejudice in favor of or against either of the parties in a case is disqualified to serve as a juror. If bias or prejudice is established, then the juror is disqualified by operation of law. However, whether a juror is biased or prejudiced may be a factual determination to be made by the court.

The Court of Civil Appeals has in effect construed this testimony as an admission of bias on the part of the juror. We do not so construe it. While the juror testified that he was concerned about what effect his being on the jury might have on his friendship with the son-in-law of the petitioner if the verdict were to go against the petitioner, he never at any time said that such concern would affect his verdict. On the contrary, he testified several times that it would not. The juror further concluded that if the son-in-law were a good enough friend, which he thought he was, it would have no effect on his friendship.

■ This is a natural attitude for the ordinary person to take. In the ordinary course of events one who discharges his duty as a juror conscientiously and fairly and in accordance with the court's charge and the evidence should not lose the friendship of a relative of one of the parties to the case regardless of the outcome. In order to hold that this juror was biased as a matter of law the testimony should compel us to conclude that the juror feared that he might lose the friendship of the son-in-law if the case went against the petitioners, and that that fear would affect the juror's verdict. We do not think this testimony compels any such holding on our part. The trial court had the opportunity of observing the juror as he testified and was in better position than an appellate court to evaluate the juror's sincerity and his capacity for fairness and impartiality. If the juror was telling the truth no bias or prejudice is shown. The court's finding that the juror was not biased or prejudiced should not be disturbed. See McBroom v. Brown, 277 S.W.2d 310 (Tex.Civ.App.1955) writ ref'd n. r. e.; Allbright v. Smith, 5 S.W.2d 970 (Tex.Comm.App.1928); Sellers v. Galveston, H. & S. A. Ry. Co., 208 S.W. 397 (Tex.Civ.App.1918), writ ref'd; Bashrum v. Vinson, 330 S.W.2d 538 (Tex.Civ.App.1959), writ ref'd n. r. e.; Cagle v. McQueen, 200 F.2d 186 (5th Cir., 1952).

The cases relied upon by the Court of Civil Appeals were cited by it for the proposition that where a juror is biased or prejudiced his affirmation "that he can set this aside and try the case fairly upon the law and the evidence" should be disregarded. Lumbermen's Insurance Corporation v. Goodman, 304 S.W.2d 139 (Tex.Civ. App.), ref'd n. r. e.; Kansas City Life Insurance Co. v. Elmore, 226 S.W. 709 (Tex. Civ.App.) no writ hist.; Texas Central Railroad Co. v. Blanton, 36 Tex.Civ.App. 307, 81 S.W. 537, no writ hist.

We have no quarrel with this statement of the law. These cases are just not in point here. The trial court found as a fact that there was no bias or prejudice on the part of the juror. The evidence does not establish the existence of bias or prejudice as a matter of law.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.