**Billie Charlene FLOWERS, Appellant,**

**v.**

**R. A. FLOWERS, Jr., Appellee.**

**No. 7535.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 8, 1965.

Rehearing Denied Dec. 6, 1965.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellant.

Gordon, Gordon & Buzzard, Pampa, James S. Robinson, Canadian, for appellee.

**122**

CHAPMAN, Justice.

The subject matter of this suit involves a question of the disqualification of a juror in a child custody contest tried to a jury, the question of which side of the controversy was entitled to open and close and the refusal of the trial court to hear the mother's proffered witnesses upon the question of divorce after agreement of the parties to leave that question for determination by the court.

This case was tried in a town and county of very small population where the record shows many members of the jury panel had heard what they referred to as gossip or rumors concerning the case. The parties to the suit are Billie Charlene Flowers, plaintiff below, the mother; and R. A. Flowers, Jr., the father. The victims of the unfortunate broken home are three little girls ranging in ages from two to ten at the time of the filing of divorce by their mother in January 1964.

The court's ruling upon appellant, Billie Charlene Flowers' contention of the disqualification of the juror, Mrs. E. J. Schmidt, is based upon three points, to-wit: (1) the trial court's error in overruling her challenge for cause; (2) in overruling her motion for mistrial and refusal to hear evidence in support thereof; and (3) in refusing her motion for new trial on the same ground.

The jurors were told on voir dire examination that the evidence would show that plaintiff drank some socially and on one or two occasions had consumed alcoholic beverages to excess. They were questioned as to whether that fact standing alone would prejudice them against her as a fit and proper person to have custody of the children.

The record preserved upon examination of Mrs. Schmidt as a prospective juror shows that she first testified she was well acquainted with the Flowers family, belonged to the same Baptist church they did in the little town of Miami, and that she

had no opinion formed in the case at all. Then when counsel said to her the evidence will show "that Billie does drink upon social occasions with the crowd at a dance, or something of that sort, she would have a highball or cocktail, and it will show on one occasion that she had too much, or two times had too much, what is your attitude—," she answered:

"A. I am against drinking in any manner, any kind.

Q. Any way or any fashion at all?

A. Any type.

Q. Mrs. Schmidt, that would definitely affect your judgment in the case wouldn't it?

A. If the evidence was true.

Q. Could you enter the—you would take a seat as a juror with a positive feeling that any drinking whatsoever is wrong, and it is bad so far as the mother of these little girls is concerned,—

A. Anybody else.

Q. If the evidence shows Billie has had one drink or two—drinks at a social occasion, you would hold that against her?

A. I don't approve."

The court then took over the examination and asked her a number of questions, one of which was:

"Q. Well, are you saying by that, Mrs. Schmidt, that you wouldn't grant either party to this law suit custody of their children if they drank?

A. I am."

The court then turned to leading questions to the juror as to her attitude about passing upon whether the mother was a fit person to have the custody of the girls, saying:

"Q. Dependent upon the testimony you hear in a trial; the mere fact

that she got drunk a few times and threw a conniption fit or something, you wouldn't hold that against her and think she wasn't—

A. Not especially."

The court then overruled the challenge of the juror for cause.

The record also shows by affidavit of a lady juror panelist who sat next to Mrs. Schmidt during voir dire examination that Mrs. Schmidt stated " * * * she felt sorry for R. A. Flowers, Jr. and that you had to admire a man that would go on to Sunday School and church after what had happened to him." Mrs. Philpot's affidavit also affirmed that Mrs. Schmidt made a statement to one of the other prospective jurors sitting next to her before the jury was selected that Billie Flowers had run off and left R. A. Flowers, Jr. once before and that both of such statements were made before she was selected and sworn to serve as a juror.

At both the motion for mistrial and motion for new trial based partly upon the proceedings just related, the court declined to hear Mrs. Philpot's tendered testimony as a witness in support of her affidavit. Upon the hearing of the motion for new trial Mrs. Flowers' attorney testified there were eleven jurors, including Mrs. Schmidt, who were undesirable to the plaintiff and that if Mrs. Schmidt on voir dire had correctly stated her attitude reflected by Mrs. Philpot's affidavit, they would have exercised a peremptory challenge as to her rather than as to some other juror. In support of such testimony and the affidavit of Mrs. Philpot the jury list upon which prospective cuts had been marked was introduced into evidence, verifying the attorney's testimony.

Article 1, Section 15 of the Texas Constitution, Vernon's Ann.St. guarantees the right to trial by jury, which our courts have held to be an impartial jury. Rhoades v. El Paso & S. W. Ry. Co., 248 S.W. 1064, 27 A.L.R. 1048 (Com.App. opinion adopted).

Article 2134, Vernon's Ann.Tex.Civ.St., provides as one of the disqualifications: "Any person who has a bias or prejudice in favor of or against either of the parties."

■ This disqualification for bias or prejudice extends not only to the parties personally, but also to the subject matter of the litigation. Rhoades v. El Paso & S. W. Ry. Co., supra; Compton v. Henrie, Tex., 364 S.W.2d 179.

In defining the terms "bias" and "prejudice" as used in Article 2134 our Supreme Court in the HENRIE case just cited has said:

"Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means pre-judgment, and consequently embraces bias; the converse is not true. The establishment of such a state of mind would disqualify Fugate from serving on this jury as a matter of law. It is only where there are grounds for disqualification other than those provided for in the statute that the discretionary powers of the trial judge may be exercised, for a disqualification under Article 2134 does not involve a matter of discretion, but a matter of law."

■ Mrs. Schmidt's statements indicate to us both bias and prejudice factually and such a prejudgment of the case as to indicate she could not have acted with impartiality. If we are correct in this factual conclusion then under the authorities just cited her disqualification is not a matter of discretion with the trial court but a matter of law. We believe the record

compels such holding on our part, and that she was, as a matter of law, disqualified under Article 2134, Section 4 to serve on the jury and that the trial court should have permitted the challenge for cause. Compton v. Henrie, supra.

Even if we are in error in our pronouncements in the preceding paragraphs, it cannot be gainsaid that the record shows bias and prejudice on the part of Mrs. Schmidt toward plaintiff and toward her alcoholic consumption her attorney admitted would be shown before the examination of the jury on voir dire. From the viewpoint of this writer, such feelings on the part of Mrs. Schmidt are to her credit even if it did disqualify her as a juror. But even if under the facts of this case bias or prejudice was a fact to be determined by the trial court, those feelings having been clearly established, her answer of "Yes, sir" to a leading question to the effect that she would be able to decide the case on the evidence submitted, should be disregarded. Lumbermen's Insurance Corporation v. Goodman, Tex.Civ.App., 304 S.W.2d 139 (N.R.E.); Kansas City Life Ins. Co. v. Elmore, Tex.Civ.App., 226 S.W. 709 (N. W.H.); Texas Cent. R. Co. v. Blanton, 36 Tex.Civ.App. 307, 81 S.W. 537 (N.W.H.). In any event we believe the court abused its discretion in refusing to hold the juror disqualified.

In Swap Shop v. Fortune, Tex., 365 S.W. 2d 151, 154, our Supreme Court in speaking of the cases just cited, said:

"We have no quarrel with this statement of the law.[1] * * * The trial court found as a fact that there was no bias or prejudice on the part of the juror. The evidence does not establish the existence of bias or prejudice as a matter of law."

Truly, the facts of that case do not, but we believe the facts of our case do.

"In cases involving juror disqualification the Complainant need not establish that probable injury resulted therefrom before a new trial may be granted." Compton v. Henrie, supra. However, under this record probable injury is established by the proof that there were other jurors who, under the known facts at the time the challenges were exercised, were less desirable than Mrs. Schmidt.

Even if we should be in error in all we have heretofore said, there is another good reason we believe this case must be reversed, because the plaintiff carried the burden of the proof upon the whole case but was denied her right to open and close the argument. There were ten witnesses who testified for Mrs. Flowers and about the same number who testified for Mr. Flowers. The statement of facts constitutes 459 pages. In a case of this nature the right to open and close the argument, we believe, is a very valuable one. This right is controlled by Rules 266 and 269, Vernon's Ann.Texas Rules of Civil Procedure. Unless one or more of the exceptions provided for in the two rules just mentioned exist, the plaintiff, with the burden of proof made by the issue or issues submitted, has the right to open and close in adducing the evidence and in the argument. Plaintiff pleaded that she was a fit and proper person to have the custody of the children. The issue asked placed that burden on her in the following form: "Do you find from a preponderance of the evidence that plaintiff, Billie Charlene Flowers, is a fit and proper person to have the care and custody of her minor daughters?"

The court permitted her to develop her testimony first and then refused her the right through her counsel to open and close the argument, despite the fact there were no admissions made by defendant

[1] The statement "of the law" had reference to the holdings of the Courts of Civil Appeals * * * "that where a juror is biased or prejudiced his affirmation 'that he can set this aside and try the case fairly upon the law and the evidence' should be disregarded."

under Rules 266 and 269. This refusal is properly preserved in the record.

Numerous cases have held that it is reversible error to wrongfully deprive one of the valuable right to open and close the argument where the burden is placed on the person complaining of such refusal. Meade v. Logan, Tex.Civ.App., 110 S.W. 188 (writ refused); Producers' Oil Co. v. State, Tex. Civ.App., 213 S.W. 349, 354; Rector v. Evans, Tex.Civ.App., 278 S.W. 924; 6 S.W.2d 105, 107 (Com.App.); Stolphor v. Bowen Motor Coaches, Tex.Civ.App., 190 S.W.2d 376, 380 (error refused W.M.).

The most important controversy in this case was obviously the custody of the children but the court still had the question of divorce to decide. It was agreed at the outset, with the court's approval, that only the evidence and issues bearing upon child custody would be presented to the jury, with divorce, support and property rights left to the court. When appellee's attorney sought to elicit testimony relating to grounds for divorce the court sustained objections thereto. Then after the jury had answered the issues on custody of the children, the court refused to hear any testimony upon the divorce question.

Having served many years as a trial judge, this writer can understand how provoking such cases can be and how the court's patience is put to test in cases of this nature. Yet, it is still a part of the duties incident to the position and the parties are entitled to their day in court. We believe an accumulation of all the errors compels a reversal of this case.

It would be a different question if the jury's verdict was only directory in the child custody matter, but since Article 4639a now leaves the jury verdict mandatory and gives the court no discretion except to follow the jury's verdict, we feel the mother is entitled to a fair trial on that question. We do not believe one can study this record without concluding that she did not receive such a trial.

Though we are not prejudging another trial in that county, this record would indicate extreme difficulty in securing a fair trial by a jury in that small populated county where so many jurors have heard rumors and gossip concerning the case.

The judgment of the trial court is reversed and remanded for a new trial.