**Lucella Detert BROWN, Appellant,**

v.

**W. P. HERRING et al., Appellees.**

**No. 4403.**

Court of Civil Appeals of Texas, Eastland.

April 16, 1971.

Rehearing Denied May 14, 1971.

Head & Kendrick, Mike Kendrick, Corpus Christi, Shafer, Gilliland, Davis, Bunton & McCollum, Paul McCollum, Odessa, Rosser & Carroll, Snyder, for appellant.

Paul New, Denver City, for appellees.

WALTER, Justice.

Mrs. Lucella Brown, a widow, filed suit against W. P. Herring individually and as executor of the estate of his deceased wife, Jimmie Herring, for damages growing out of an automobile collision. The jury found Mrs. Brown guilty of contributory negligence and judgment was rendered that she take nothing. She has appealed and presents 18 points of error. She contends there is no evidence to support the answers to eight of the issues and that such answers are contrary to the preponderance of the evidence and are factually insufficient. She also contends the court erred in overruling her challenges for cause to some of the jurors and in overruling her motion to strike the testimony of an expert witness.

Mrs. Brown testified substantially as follows:

I was involved in an automobile accident in August 1966 here in Scurry County and as a result thereof I sustained personal injuries and incurred medical, doctor, hospital and drug bills. On the day of the accident, I left Lubbock about seven o'clock in the morning in my 1966 Cadillac on my way to Putnam, a small town near Abilene. I did not stop at any time from the time I

left Lubbock until I was involved in the accident. It was a beautiful day and very little traffic. I had a cruiser on my car and it was set at a speed of between fifty-five and sixty miles per hour. The accident occurred about 8:30 or 8:45. I was traveling in a southerly direction as I approached a postal station called Dermott which is situated on top of a little rise near the highway. This was a four lane highway with a median dividing the lanes. I was traveling in the right lane going south. When I saw the Herring Oldsmobile slowly moving into my right lane of traffic, I went to the left lane as the Herring car approached the center line. I was traveling in the left lane and I sounded my horn and put on my brakes. The Oldsmobile then turned abruptly in front of me and I drove off the roadway.

"A I was not able to avoid hitting the car. I did not know that the car would do anything except go down the road, because I didn't know there was a crossover there. It was not discernible from this distance, neither was I looking at this area at this time I was watching the car and I didn't know. I thought that the car would do nothing but go into the lane of traffic. That's why I stayed to the left to give her the lane of traffic.

Q And when she moved over to the center line, you applied your brakes and sounded your horn?

A Yes, sir.

Q And you guided your car to the left?

A To the left.

Q And did you continue to guide your car to the left until the accident occurred?

A I did.

Q Let me ask you this. This car that you saw with which you were in collision, did it at any time that you saw it, did it ever give any character of signal, blinker signal or hand signal?

A No signals, no lights, no hand, no brakes. It simply came out and across and I didn't know there was a crossover there."

Wendell Rehm, a Texas Highway Patrolman, testified substantially as follows:

I investigated the 1966 Cadillac and the 1964 Oldsmobile accident at Dermott on August 2, 1966. We normally refer to the highway coming from Lubbock to Snyder as running south. The Cadillac was traveling south and I measured 200 feet of skid marks laid down by it. I found no skid marks for the Oldsmobile. The impact occurred in a crossover. It was 16 feet and 11 inches to the east of the center stripe in the southbound lane of traffic and about 5 feet from the edge of the pavement over into the crossover. The Cadillac traveled about 60 feet from the point of impact. The Oldsmobile traveled 165 feet from the point of impact. The Oldsmobile was going east through the crossover or into the crossover and upon impact it changed directions to the south. The right front fender of the Cadillac struck the left front door of the Oldsmobile. The officer was asked, on cross examination, the following questions and he gave the following answers:

"Q All right, sir. Now, the left wheel marks commencing 50 or 55 feet from the point of impact—now, we can see the left wheel marks here some 50 to 55 feet, approximately even with this deal, is that correct?

A Yes, sir.

Q But to get back to the right one, we have about another thirty three feet, do we not?

A Yes sir.

Q All right. So it looks like the point here where these tire marks begin are 88 or something less than a hundred feet from this point to the point of impact?

A Yes, sir.

Q  All right, sir.  But you wrote down—and as I said, you were busy—but you wrote down on your report 200 feet, didn't you?

A  Yes, sir.

Mrs. Herring was driving the Oldsmobile and she was killed as a result of the accident.  The jury found that Mrs. Herring failed to keep a proper lookout which was a proximate cause of the collision.  They also convicted her of five other negligent acts which were a proximate cause.  They also found Mrs. Brown guilty of failing to properly apply her brakes, failing to have her vehicle under proper control, traveling at a speed in excess of that which an ordinary prudent person would have traveled under the circumstances and that each act was a proximate cause.

■   It appears that the proper control issue is no longer with us since Barclay v. C. C. Pitts Sand and Gravel Company, 387 S.W.2d 644 (Sup.Ct.1965).  We are of the opinion that the court should have sustained the objection to issue 38, the proper control issue inquiring if Mrs. Brown had her car under proper control.  However, we have considered appellant's no-evidence points on the other acts of negligence and proximate cause found against Mrs. Brown and we find some evidence of probative value which supports such findings.

We have considered the entire record and find that such answers are not against the preponderance of the evidence.

We find no merit in the contention that the court erred in overruling appellant's challenges for cause to the prospective jurors Gerald C. Green, H. C. Gafford, Jr., Earl Browning, Jack Martin, Frank Taylor and Billy Wayne Thompson.  Mr. Gafford was the only one of the jurors who was selected and actually served on the jury.  The juror Gafford was informed by one of appellant's attorneys, Mr. McCollum, about our jury system and about the fact that if such system was to survive we must have "unbiased, unprejudiced, completely

fair jurors".  Gafford was asked if he knew Mr. Ken Bowlin, the lawyer who represents the appellee.  His reply was that he was not certain at first but that he was now; that he knew him and went to Hermleigh High School with him.  Gafford informed Mr. McCollum that if he were chosen as a juror he could give Mrs. Brown the same kind of a trial that he would want if he were in Mrs. Brown's shoes; that he could be fair with Mrs. Brown and would cheerfully and without hesitation find against the contention that Mr. Bowlin propounds if he found the facts that way.  Gafford also testified that he was acquainted with defense counsel Cotton and the appellee; that he lives in the Hermleigh community where the appellee makes his home; at one point, he stated that such acquaintance would possibly or probably influence him.  But he subsequently testified that he could set aside everything and render a verdict on the law and the evidence.  Appellant says that "subsequent rehabilitation by defense counsel Bowlin could not change the effect of his testimony and the honest answers he gave to plaintiff's counsel".

Rule 228 Texas Rules of Civil Procedure is as follows:

"A challenge for cause is an objection made to a juror, alleging some fact which by law disqualifies him to serve as a juror in the case or in any case, or which in the opinion of the court, renders him an unfit person to sit on the jury.  Upon such challenge the examination is not confined to the answers of the juror, but other evidence may be heard for or against the challenge."

In Swap Shop v. Kay Fortune, 365 S.W. 2d 151 (Sup.Ct.1963), the Court said:

"The trial court, in overruling respondents' motion for mistrial based on this testimony, impliedly held that the juror was not biased or prejudiced.  Said Article 2134 provides that any person who has a bias or prejudice in favor of or against either of the parties in a case

is disqualified to serve as a juror. If bias or prejudice is established, then the juror is disqualified by operation of law. However, whether a juror is biased or prejudiced may be a factual determination to be made by the court. * * * The trial court had the opportunity of observing the juror as he testified and was in better position than an appellate court to evaluate the juror's sincerity and his capacity for fairness and impartiality. If the juror was telling the truth no bias or prejudice is shown. The court's finding that the juror was not biased or prejudiced should not be disturbed."

 Reversible error is not shown by overruling appellant's objection to the five jurors who were not selected and who did not serve on the jury. West Texas Utilities Company v. Bergstrom, 458 S.W.2d 548 (Tex.Civ.App., Writ Ref. n. r. e.). Swap Shop v. Kay Fortune, (supra), supports the court's action in overruling appellant's objection to the juror Gafford.

Appellant contends the court erred in overruling her motion to strike the testimony of the expert witness, Dr. Raymond Mires. The motion states in part:

"This witness was called to testify as an 'expert witness'. He has sought to enlighten the jury with reference to facts concerning speed, distance, brake marks, tire marks, etc."

Issue Number 40 inquired if immediately before the collision Mrs. Brown was proceeding at a rate of speed in excess of that at which an ordinary prudent person would have proceeded in the exercise of ordinary care under the same or similar circumstances to which the jury answered "Yes". Dr. Mires testified that in his opinion Mrs. Brown was traveling 75 m. p. h. Officer Rehm testified that in his opinion Mrs. Brown's speed was 65 m. p. h. The witness Pickett testified that just before the accident Mrs. Brown passed him and he was traveling 65 m. p. h. He was a witness to the collision.

Dr. Mires is a physics professor from Texas Tech who testified concerning Mrs. Brown's speed. He arrived at his opinion from tests conducted at and near the scene of the accident, photographs of the automobiles involved and other facts.

We find in Texas Law of Evidence by McCormick and Ray, Vol. 2, Sec. 1401, page 235 the following:

" * * *. Whether the person offered possesses the required qualification is a preliminary question to be determined by the trial judge and should not be left to the jury. In the decision of this question our courts have wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse."

 We conclude that the appellant has not discharged her burden of establishing that the court abused his discretion in failing to sustain such motion. Billingsley v. Southern Pacific Company, 400 S.W.2d 789 (Tex.Civ.App., Writ Ref. n. r. e.).

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.